Gregory ROUSTER, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 45S00–9304–PD–408

Supreme Court of Indiana.

Feb. 19, 1999.

James N. Thiros, Merrillville, Indiana, Alan M. Freedman, Carol R. Heise, Chicago, Illinois, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found Gregory Rouster guilty of felony murder for killing his former foster parents, John and Henrietta Rease. In accordance with the jury's recommendation, the court sentenced Rouster to death. On direct appeal, we affirmed. *Rouster v. State*, 600 N.E.2d 1342 (Ind.1992). Rouster filed a petition for post-conviction relief challenging his conviction and sentence. The post-con-

viction court denied the petition. In this appeal, Rouster asserts numerous claims which we consolidate and review as follows:

I. Ineffective assistance of counsel;

II. Systemic defects in the Lake County public defender system;

III. False evidence;

IV. Pre-sentence psychological profile; and

V. Post-conviction due process.

### Facts

The facts of this case may be found in our direct appeal opinion. *See id.* at 1344–46.

### Standard of Review

■ Post-conviction procedures do not afford the petitioner with a super-appeal. Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. Ind.Post–Conviction Rule 1(1); *Weatherford v. State,* 619 N.E.2d 915 (Ind. 1993). Petitioners bear the burden of establishing their grounds by a preponderance of the evidence. P–C.R. 1(5); *Weatherford,* 619 N.E.2d at 917. If an issue was known and available but not raised on appeal, it is waived. If it was raised on appeal but decided adversely, it is res judicata. *Lowery v. State,* 640 N.E.2d 1031 (Ind.1994), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

■ When one is appealing the negative judgment of a post-conviction court, the standard of review is even more rigorous. Petitioners must show that the evidence, when taken as a whole, "leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court." *Weatherford,* 619 N.E.2d at 917.

### I. Ineffective Assistance of Counsel

■ The right to effective assistance of trial and appellate counsel has been firmly established by the U.S. Supreme Court and by this Court. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see King v. State,* 467 N.E.2d 726 (Ind.1984). In his post-conviction petition,

Rouster listed several claims asserting trial counsel ineffectiveness. The post-conviction court found these claims were waived due to appellate counsel's failure to raise the issues on direct appeal. While this case has been pending, we have decided that claims of ineffective assistance of trial counsel may be raised in collateral proceedings. *Woods v. State,* 701 N.E.2d 1208 (Ind.1998). Accordingly, we address these claims on the basis urged by Rouster.

■ We analyze claims of ineffective assistance of trial and appellate counsel under the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, one must show both deficient performance and resulting prejudice. A deficient performance is a performance that falls below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Douglas v. State,* 663 N.E.2d 1153 (Ind.1996). Prejudice exists when a defendant/petitioner shows "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Cook v. State,* 675 N.E.2d 687 (Ind.1996).

■ Even if the prisoner succeeds in showing a reasonable probability the results would have been different, he must also show his conviction was fundamentally unfair or unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Games v. State,* 690 N.E.2d 211 (Ind.1997), *modifying Games v. State,* 684 N.E.2d 466 (Ind.1997). A fair trial has been denied a defendant when his "conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable." *Canaan v. State,* 683 N.E.2d 227, 229 (Ind.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). A claimant must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense. *Burris v. State,* 558 N.E.2d 1067

(Ind.1990), *cert. denied,* 516 U.S. 922, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995).

Rouster claims his trial counsel were ineffective for the following reasons: at pre-trial proceedings and during the guilt phase of trial, counsel failed to file a motion for severance, failed to engage in important discovery,[1] and failed to present expert testimony on the issue of whether Rouster was acting in self-defense; during the sentencing phase, counsel failed to investigate and present additional mitigating evidence and failed to make a new request for separate sentencing trials. Rouster also asserts that errors in penalty phase instructions constitute both ineffective assistance of counsel and fundamental error. The only claim Rouster makes regarding ineffective assistance of appellate counsel is that appellate counsel were ineffective for failing to raise the issue of ineffectiveness of trial counsel. We review each of Rouster's claims and any cumulative effects of the alleged errors in the following subsections.[2]

*A. Counsel's Pre-trial and Guilt Phase Performance.* Rouster argues his counsel were ineffective during the pre-trial and guilt phase periods of his trial for failing to file a motion to separate trials and for failing to offer evidence on self-defense.

### 1. Motion for Separate Trials

■ Rouster and co-defendant Darnell Williams were tried together and both were convicted of two counts of felony murder. *See Rouster,* 600 N.E.2d at 1344. Prior to trial, Williams' counsel sought to have Williams and Rouster tried separately but the trial court denied the motion as it contained no specific facts or allegations to put the court on notice of any mutually antagonistic defenses. *Id.* at 1346. Rouster's counsel did not file a pretrial motion nor did he make a subsequent motion for separate trials at the close of evidence, though such motions were possible under Ind.Code § 35–34–1–12(a), (b). On direct appeal, Rouster's attorney alleged the trial court erred in failing to try the two defendants separately. *Rouster,* 600 N.E.2d at 1344, 1346. We held that Rouster had waived the issue due to his failure to comply with the separate trials statute. *Id.* at 1346. Rouster now re-casts the issue as a matter of ineffective assistance of counsel.

■ Defendants have no absolute right to a separate trial or severance, but they may ask the trial judge to exercise her discretion to grant such a motion. *Lampkins v. State,* 682 N.E.2d 1268 (Ind.1997), *modified on reh'g by* 685 N.E.2d 698 (Ind. 1997). An abuse of discretion occurs when a court denies a defendant's properly filed motion for separate trials and the parties' defenses are mutually antagonistic to such a degree that acceptance of one party's defense precludes the acquittal of the other. *Id.* at 1272 (citing *Underwood v. State,* 535 N.E.2d 507 (Ind.1989), *cert. denied* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989)). A defendant is not, however, entitled to a separate trial merely because a co-defendant implicates that defendant.[3] *Id.* We initially con-

---

1. In the "Summary of Argument" section of his brief, Rouster claims important discovery was omitted by his counsel. (Appellant's Br. at 51.) Because he provides us with no argument in regard to this claim, however, we do not consider it. Ind.Appellate Rule 8.3(A)(7) ("Each error that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto.").

2. In his appellate brief, Rouster does not address several of the claims the post-conviction court concluded were waived. We commend counsel for making an intelligent strategic decision. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

3. Corpus Juris Secundum describes the degree of antagonism generally necessary to require severance as follows:

Defendants asserting allegedly antagonistic defenses may disagree on facts not comprising the core of their defenses without generating the kind of prejudice that mandates severance, and therefore it must be demonstrated that their defenses are so irreconcilable as to involve fundamental disagreement over the core and basic facts in order for severance on the grounds of conflicting defenses to be obtained. Defenses reach that level of antagonism necessary to warrant severance if the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other, or if the defense of one party, if believed, necessarily indicates the guilt of the other party, or if acceptance of one party's defense precludes acquittal of the other party.

sider the events that actually occurred at trial to determine whether a motion for separate trials indeed should have been granted, had it been filed. *Id.* (citing *Hopper v. State,* 539 N.E.2d 944 (Ind.1989)).

At trial, Rouster's co-defendant Williams argued that the State had not proven its case against him beyond a reasonable doubt. To create doubt in jurors' minds, Williams implicated Rouster as the lone killer. He argued Rouster had a motive, that he was "settl[ing] a score." (T.R. at 2529.) He also argued that the facts showed that only Rouster could have fired the shots which killed the Reases. (T.R. at 2532–34.) Rouster counter-argued that blood found on Rouster's back proved that he was facing away from the victims at the time shots were fired and thus Williams must have actually fired the shots. (T.R. at 2565–66.) Rouster also argued that he was too intoxicated to form the intent to murder. (T.R. at 2569–73.) At the close of Rouster's argument, the trial judge gave defendants Williams and Teresa Newsome an additional fifteen minutes each "for response to the presentation by the defendant Rouster."[4] (T.R. at 2593.)

■ A substantial portion of both Williams' and Rouster's defense theories centered around the assertion by each that the other fired the fatal shots. It would have been well within the trial judge's discretion to grant a motion for separate trials under Ind.Code § 35–34–1–11, had such a motion been filed. It would not, however, have been an abuse of discretion to deny the motion. Our standard, enunciated in *Underwood,* 535 N.E.2d at 514, provides trial judges with substantial leeway in deciding whether to grant a motion for separate trials.[5] To show an abuse of discretion, one must demonstrate that acceptance of one party's defense precludes the acquittal of the other. *Id.* Here, Williams could have been acquitted if the

jury accepted his argument that the State had not proven beyond a reasonable doubt that he had been sufficiently involved in the robbery and killing of the Reases to be culpable under Ind.Code § 35–42–1–1(2), while Rouster could have been acquitted on the basis of his intoxication defense. We would not have found error had the trial court denied a properly drafted motion filed by Rouster's counsel.

■ Moreover, there is no reasonable probability that the results at the guilt phase of trial would have been different if a separation had occurred. First, each co-defendant's arguments regarding who pulled the trigger were actually of little relevance since both were convicted of felony murder under Ind.Code § 35–42–1–1. All participants in a robbery or attempted robbery that results in killing by one robber are deemed equally guilty of murder, regardless of which participant actually killed the victim. *Rogers v. State,* 262 Ind. 315, 315 N.E.2d 707 (1974). Additionally, the same evidence would have been admitted against Rouster even if he had been granted a separate trial. Such evidence includes testimony that Rouster said, "I killed the [m-fs]" to his co-defendant Teresa Newsome shortly after shots were heard inside the Rease home, (T.R. at 890–91); Derrick Bryant's testimony that he heard Rouster tell Williams, "[B]ring them both back here" before he heard Henrietta Rease say, "Greg, why are you doing this?" followed by two shots, (T.R. at 2040–41); plus the physical evidence of the blood consistent with that of John Rease found on Rouster's shoes, socks, and vest. Considering the amount of corroborating evidence indicating Rouster's role in the crime, Rouster was not prejudiced by his counsel's failure to move for separate trials.

22A C.J.S. *Criminal Law* § 569 (1989).

---

**4.** The trial judge allowed this "rebuttal" period so that Rouster's co-defendants could answer any aspersions cast by Rouster upon their defenses. *Rouster,* 600 N.E.2d at 1347. On direct appeal, we held that although the trial court's action was unusual, it was plainly within the judge's discretion to order such a procedure. *Id.*

**5.** Indiana Code § 35–34–1–11(b) states:

[U]pon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.

### 2. Failure to Present Self-Defense Evidence

■■■■ Rouster argues that trial counsel were ineffective for failing to present expert evidence to show the killings were committed in an act of self-defense. Self-defense is not available, however, as an affirmative defense when one is engaged in the commission of a robbery. Ind.Code Ann. § 35–41–3–2(d)(1) (West 1986). Rouster's proposed evidence (expert testimony meant to indicate the Reases' wounds were consistent with shots fired in self-defense) does not affect the evidence necessarily believed by the jury beyond a reasonable doubt that Rouster and Williams were both engaged in robbery at the time the killings occurred. Thus, even if we assume Rouster was indeed acting to protect himself (an assumption that is belied by virtually all of the evidence), he is barred from asserting self-defense since the jury found he was engaged in robbery at the time of the killings. Trial counsel were not ineffective for failing to offer self-defense evidence.

*B. Counsel's Penalty Phase Performance.* Rouster next argues that his counsel were ineffective for insufficiently investigating and presenting mitigating evidence at sentencing, and for failing to move for a severance at the penalty phase.

### 1. Additional Mitigating Evidence

The mitigating evidence Rouster asserts should have been presented stems from his misfortune in having been born to a mother who abused heroin. He believes that had the jury heard evidence about the physiological and emotional effects Rouster incurred due to his mother's addiction and her early abandonment of him, he would not have been sentenced to death.

On direct appeal, Rouster's counsel made arguments similar to those furthered by Rouster's post-conviction counsel. In response to these arguments, we held:

> Rouster concedes in his brief that the State presented evidence sufficient to prove the aggravators. He contends, however, that mitigating circumstances exist which are not outweighed by the aggravating circumstances and thus the death penalty should not be imposed. He points to facts in the record detailing the unfortunate childhood which he endured: born to a fourteen year old prostitute, abandoned at birth, raised as a ward of the state, shuttled from foster homes to institutions, more than a dozen different living arrangements in eighteen years.
>
> The jury heard this evidence before making its recommendation that Rouster receive the death penalty for robbing and killing his elderly foster parents. There are indications in the record that the trial judge also considered Rouster's history in reaching his decision. The judge concluded, however, that "[Rouster's] lack of family support and traditional human relationships, though a factor in his antisocial behavior, cannot excuse that conduct ..." Record at 147. The court then found that the aggravating circumstances predominated. The evidence supports this conclusion about the relative weight of all the circumstances and thus the decision regarding the penalty to be imposed on Rouster.

*Rouster,* 600 N.E.2d at 1350.

■■■■ Rouster attempts to differentiate his present claim from the one he made on direct appeal by arguing his trial counsel should have hired expert witnesses to testify on the issue of how his troubled circumstances affected his mental capacity.[6] During sentenc-

---

**6.** The post-conviction court concluded that Rouster did not suffer from extreme mental or emotional disturbance and that the jury was well aware that *Rouster suffered from some degree of mental or emotional disturbance due to documents presented them during the penalty phase of trial.* (P–C.R. at 1132–1133.) The court's conclusion about Rouster's level of mental disturbance rested on the following facts:

Petitioner was tested by Dr. Williams, a psychologist, in February of 1994. An educator,

Gladys Brown, tested petitioner in March of 1994. Finally, Dr. Gelbort tested petitioner in 1995. According to the testimony of the State's expert, Dr. Pueschel, petitioner's raw data indicated that he performed well for Dr. Williams, scoring in the low average range. One month later, when tested by Gladys Brown, *petitioner asked how his performance could benefit his petition for postconviction relief.* He performed poorly for Gladys Brown who concluded that the petitioner had and has

ing, trial counsel did note several times, however, that Rouster was emotionally disturbed. Counsel also referred the jury to opinions given earlier at trial by members of the Department of Public Welfare which stated Rouster was emotionally disturbed. The additional testimony offered by the petitioner during post-conviction would have given the jury neither additional nor crucially different information. Based on this information and the findings of the post-conviction court, we conclude counsel's performance was not deficient for failing to offer additional mitigating evidence about Rouster's mental state.

### 2. Motion for Separate Trials at the Sentencing Phase

 Rouster argues that, even if his counsel's failure to file a motion for separate trials in regard to the guilt phase of his trial was within the bounds of effective representation, his failure to file a motion for separate trials before the sentencing phase was deficient, prejudicial conduct.

Whether a defendant may claim separately that his counsel was deficient for failing to file a motion for separate trials in regard to the guilt and penalty phases of his trial is a novel question in our jurisprudence.[7] Indiana Code § 35–34–1–11 enumerates the grounds upon which a motion to separate may or should be granted. The portion of the statute relevant to Rouster's case reads:

> [U]pon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a

fair determination of the guilt or innocence of a defendant.

Ind.Code Ann. § 35–34–1–11(b) (West 1986). The rules describing when a motion for separate trials may be made read:

> (a) A defendant's motion for severance of crimes or motion for a separate trial must be made before commencement of trial, except that the motion may be made before or at the close of all the evidence during trial if based upon a ground not previously known. The right to severance of offenses or separate trial is waived by failure to make the motion at the appropriate time.
>
> (b) If a defendant's pretrial motion for severance of offenses or motion for separate trial is overruled, the motion may be renewed on the same grounds before or at the close of all the evidence during trial. The right to severance of offenses or separate trial is waived by failure to renew the motion.

Ind.Code Ann. § 35–34–1–12 (West 1986).

The key to whether the trial court should consider a motion to separate trials filed at the close of evidence is thus whether a previously unknown ground, or a known but newly relevant ground, causes a separate trial to become necessary for a fair determination of the defendant's guilt or innocence. Here, no evidence different from that which we have already considered in our previous section on whether trial counsel should have filed a motion to separate could have been offered by Rouster. *See* discussion *supra* Part I.A.1. Accordingly, our conclusions regarding Rouster's arguments are the same and counsel was not deficient, nor was Rouster preju-

learning disabilities. Dr. Gelbort used some of the same tests that Dr. Williams used. On all but two of the duplicated tests, petitioner performed poorly for Dr. Gelbort despite having previously performed adequately for Dr. Williams (low average range).

Dr. Gelbort expressed the view that the disparity in performance was attributable to A.D.D. Dr. Pueshel explained that A.D.D. does not exemplify itself that way.... Even Dr. Gelbort conceded that the disparity in scores could be attributable to secondary gain motivation.... We conclude that the petitioner has failed to prove by a preponderance of the evi-

dence that he has A.D.D. or neurological impairment.
(P–C.R. at 1132–33 (emphasis in original).)

7. Rouster cites several cases from other states which imply that the courts in question specifically focused on events occurring during sentencing in deciding whether the trial court had abused its discretion in denying motions to sever. (*See* Appellant's Br. at 79 (citing *Foster v. Kentucky,* 827 S.W.2d 670 (Ky.1991); *McDaniel v. Arkansas,* 278 Ark. 631, 648 S.W.2d 57 (Ark. 1983); *Lafevers v. Oklahoma,* 819 P.2d 1362 (Okla.Crim.App.1991)).)

diced, by counsel's omission in failing to file a motion to separate trials before sentencing.

*C. Ineffective Assistance of Counsel/Fundamental Error in Penalty Phase Instructions.* Rouster argues counsel was ineffective for failing to raise penalty phase instruction issues. He alternatively argues each alleged instruction error was fundamental.[8] The four errors alleged by Rouster are: (a) the instructions did not inform the jury they were to weigh each co-defendant's mitigating and aggravating circumstances separately, (b) the instructions failed to inform the jury that if they found Rouster was sufficiently intoxicated, this finding would negate the intentionality requirements inherent in two of the aggravating factors urged by the State, (c) that the jury should have been instructed on what sentencing alternatives were available to the judge if they did not recommend the death penalty, and (d) the instructions might have led jurors to believe they were required to find mitigating circumstances unanimously.

### 1. Individualized Mitigating and Aggravating Factors

■ Rouster argues his counsel were ineffective for failing to ask the court to instruct the jury that they were obligated to consider whether the death penalty was appropriate for the petitioner based solely on his own actions and intent. He argues that without any such instruction the jury could consider evidence entered for or against co-defendant Darnell Williams in determining Rouster's death sentence, thereby violating the Eighth Amendment's requirement of

"precise and individualized sentencing." (Appellant's Br. at 97–98 (citing *Stringer v. Black*, 503 U.S. 222, 230, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992))).

■ When a jury or judge sentences an individual to death, the Eighth Amendment requires "an individualized determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (emphasis omitted). In Rouster's case, the trial court made it clear to the jury that Rouster was to be sentenced on the basis of his individual acts and character by instructing them:

> The jury may recommend the death penalty be imposed against defendant, Gregory Anthony Rouster, only if it finds:
> 1. that the State has proved beyond a reasonable doubt the existence of one of the aggravating circumstances alleged in the charging information against Gregory Anthony Rouster, and
> 2. that any mitigating circumstances that exist for Gregory Anthony Rouster are outweighed by one or more of the aggravating circumstances for Gregory Anthony Rouster.

(T.R. at 120.) In light of this instruction, trial counsel need not have asked for any more.

### 2. Intoxication

Rouster says his trial counsel should have offered a penalty phase instruction inform-

8. We consider each of Rouster's claims under the *Strickland* ineffective assistance of counsel standard with the understanding that if Rouster is unable to satisfy that test's prejudice prong, he will also be unable to satisfy the post-conviction fundamental error standard. A comparison of the two standards demonstrates the point. Under the *Strickland* prejudice prong, the defendant/petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Lockhart*, 506 U.S. at 369, 113 S.Ct. 838; *Canaan*, 683 N.E.2d at 229. Our post-conviction fundamental error standard requires the petitioner to persuade the court, by a preponderance of the evidence, that a violation of basic principles of law caused the petitioner's conviction or sentence to be invalid. *Weatherford*, 619 N.E.2d at

917 (at post-conviction proceedings, burden was on petitioner to show that required sequence of prior unrelated felonies did not in fact exist). Though the words "unreliable" and "invalid" may have slightly different meanings in some contexts, the fact that each test is driven by the core concern that the defendant receive a fair trial causes us to believe that those words are virtually interchangeable here. *Compare Lockhart*, 506 U.S. at 368, 113 S.Ct. 838 ("Our decisions have emphasized that the Sixth Amendment right to counsel exists 'in order to protect the fundamental right to a fair trial.'" (internal citations omitted)) *with Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994) (stating in regard to fundamental error analysis: "Our task is to ... decide whether the error had substantial influence upon the verdict to determine whether the trial was unfair.").

ing the jury that, if proven, Rouster's intoxication could have negated the intent requirements inherent in two of the three statutory aggravating factors alleged by the State (intentionally killing John Rease and intentionally killing Henrietta Rease during the commission or attempted commission of a knowing or intentional taking of property).

The jury was instructed on the defense of intoxication during the guilt phase but not during the sentencing phase. At sentencing, Rouster's counsel did not offer an instruction on the intoxication defense as to aggravating circumstances but did argue to the jury that whether Rouster intentionally killed the Reases was an open issue during sentencing since Rouster was convicted under the felony murder portion of Ind.Code § 35–42–1–1.[9] He also argued that the evidence of Rouster's intoxication was sufficient to show Rouster could not have intentionally killed the victims.[10]

██ *Johnson v. State* explains how the intoxication defense should be considered within the context of death penalty sentencing.

In Indiana, voluntary intoxication can be offered as a defense to any crime. It follows a fortiori from the provision of the death sentence statute defining the aggravating circumstances applicable ... that voluntary intoxication [may be] properly asserted ... as a defense to ... aggravating circumstance[s], and as a mitigating circumstance as well. The basic assumption underlying the defense is that drug and alcohol intoxication may be so severe as to prevent a person from forming a criminal intent, yet not so severe as to prevent that person from performing acts required to commit the crime.

584 N.E.2d 1092, 1099–1100 (Ind.1992), *cert. denied* 506 U.S. 853, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992) (internal citations omitted). The intoxication defense is still available to defendants at death penalty sentencing because the State is required to prove its alleged aggravating factors beyond a reasonable doubt before the jury may consider them. *See* Ind.Code Ann. § 35–50–2–9(a) (West Supp.1997).

██ On the other hand, failure to submit an instruction is not deficient performance if the court would have refused the instruction anyway. Such would have been the case here.

██ The intoxication defense cannot prevail if evidence shows the defendant had the ability to perform tasks such as attempting to hide his crime, giving instructions to others, or taking himself from place to place immediately following the crime. *Montgomery v. State*, 521 N.E.2d 1306 (Ind.1988). The evidence here shows that Rouster was able to perform physical and mental acts to such an extent that it is extremely unlikely the jury would have found Rouster so intoxicated that he was unable to engage in intentional acts.

██ The facts indicate Rouster felt that the Reases owed him money and he declared that he was going to get it. *Rouster*, 600 N.E.2d at 1344. After Rouster and Williams arrived at the Rease home, witnesses overheard Rouster say to the Reases that "he wanted his share." *Id.* at 1345. Henrietta Rease asked everyone to leave and the group complied, but lingered nearby to discuss their next step. Williams told Rouster, "she's gypping you out of your money." *Id.* Another teenager told Williams and Rouster, "you all have guns ... go take the money."

---

9. Rouster's counsel argued:
 He was charged with felony murder, not an intentional murder. The State's telling you now in the penalty phase that these killings were done intentionally. If they were done intentionally, why wasn't he charged with an intentional killing as to John Rease and Henrietta Rease?
 (T.R. at 3074–75.)

10. Rouster's counsel argued intoxication as a mitigating factor, stating to the jury:

You know that he was intoxicated. The police officer told you that his eyes were bloodshot. He smelled of intoxicants. Witnesses have told you that they saw him drinking from a Private Stock bottle, 40 ounce bottle.... Did that destroy his will to form his conduct to that we would normally expect of such an individual? We submit to you that it did.
(T.R. at 3095.)

*Id.* Rouster said "let's go rob them." *Id.* A witness testified she saw Rouster and Williams enter the Rease home together and then heard shots. She also said she saw a man in a white shirt (Rouster was wearing white while Williams wore blue) enter the house with a gun in his back pocket and then heard gunfire.

Derrick Bryant, living with the Reases as a foster child at the time, overheard the events as they unfolded in the house. Bryant heard Williams tell Henrietta to get on the floor and heard Henrietta pleading with Williams not to hit Mr. Rease because he had a bad heart. Rouster demanded to be told "where's the money at?" *Id.* at 1346. Rouster told Williams to "bring both of them back here." *Id.* Bryant heard Williams say, "it's your time" and then heard Rouster say something like "waste them." *Id.* Mrs. Rease asked, "Greg why are you doing this[?]" *Id.* Rouster replied, "my name ain't Greg." *Id.* Two shots were fired and Bryant fled through the back door. Afterward, one witness overheard Rouster exclaim to Teresa Newsome, "I killed the [m-fs]." *Id.* at 1345.

Rouster was able to deliberate, communicate, and then act towards a chosen end. Given evidence that Rouster was in control of his faculties and the lack of evidence that Rouster was intoxicated to the extreme level necessary to provide an affirmative defense,[11] we conclude that the trial court would have refused an intoxication instruction and that counsel was thus not deficient for failing to tender one.

### 3. Jury's Information Regarding Sentencing Alternatives

■ In its closing argument the State argued to the jury:

No[t] executing them will, is not the only way to guarantee that they will never do anything again. They may serve up to 120 years in prison.... The minimum is 30 for each crime they can be sentenced between 30 and 60 years. One crime can be stacked on top of another or they can be together. So, the maximum they may get between the two homicides is 120 years. The minimum sentence is 30 years and no matter what number they get in between there or at the top or at the low end, they're still eligible for release if they do half of that. So, if they receive the maximum sentence, they may be out in 60 years. If they receive the minimum sentence, they could be out in 15 years. That is the status of the law if you do not impose the death penalty in this case.

(T.R. at 3139–40.) The instructions the court gave stated:

In the State of Indiana, if the death penalty is not imposed, the sentence for murder is a fixed sentence of from thirty (30) to sixty (60) years. The presumptive penalty is forty (40) years. The Court at sentencing imposes a specific number of years within that range.

In the State of Indiana, a defendant can earn credit for good behavior to apply against the sentence, with a maximum allowable credit of fifty percent (50%) of the sentence imposed by the Court.

(T.R. at 175A.) No information within the court's instructions informed the jury about the potential for consecutive or concurrent sentencing.

■ Rouster argues that the trial court erred in failing to instruct the jury at sentencing on what options were available to the judge if the jury did not recommend death. The court's procedures complied with the death penalty sentencing statute then in force, Ind.Code Ann. § 35-50-2-9 (West 1986), and thus the court's instructions were within the bounds of Indiana law at the time.[12] Rouster claims, however, that these

---

11. The evidence which Rouster argues shows he was intoxicated to the point that he could not have formed the required mental state to commit robbery or murder follows: Donna Thomas, a bus driver, noticed that Rouster had the smell of intoxicants on his breath; trooper Rodney Means, who picked up Rouster shortly after the murders occurred, testified that Rouster appeared intoxicated and had noticeably slow reac-

tions and slightly slurred speech. Edwin Taylor also testified Rouster was drunk. Jimmy Grey testified that Rouster was drinking from a Private Stock bottle containing alcohol.

12. Under our current death penalty sentencing statute, courts should instruct the jury on the potential for consecutive or concurrent sentencing, and the court's failure to provide the jury

procedures violated his Fourteenth Amendment right to due process as that right was described in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). In *Simmons,* the Court held that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at 156, 114 S.Ct. 2187. Rouster reads this case for the broad proposition that a defendant's due process rights are violated whenever there is a possibility a defendant may be sentenced to death and the jury is not instructed on the possibility of concurrent or consecutive sentences.

Rouster's argument is unavailing. *Simmons* was handed down more than a year after we decided Rouster's case on appeal. Because *Simmons* was unavailable to either Rouster's trial or appellate counsel, we cannot say their respective performances were deficient for their failure to make a claim based on *Simmons,* even if we accept Rouster's reading of that case.

4. Unanimity and Mitigating Factors

█ Rouster argues the instructions given the jury failed to inform jurors that their determinations regarding mitigating factors should be made individually by each juror and did not need to be unanimous. The relevant instructions follow:

INSTRUCTION NO. 5

The defendants may present any additional evidence relevant to the aggravating circumstance alleged or any of the mitigating circumstances provided by the statute. The mitigating circumstances that may be considered are as follows:

(seven possible mitigating factors were listed by the court including "[a]ny other circumstances appropriate for consideration").

with a verdict form which included the possibility of sentencing Rouster to life imprisonment without parole would have been error. Ind.Code Ann. § 35–50–2–9(d), (e) (West Supp.1998). However, because Rouster committed his crime on August 12, 1986, the law which was in force on that date continues to apply to him. It is a well established rule of our criminal jurispru-

INSTRUCTION NO. 6

The jury may recommend the death penalty be imposed against defendant, Gregory Anthony Rouster, only if it finds:

1. that the State has proved beyond a reasonable doubt the existence of one of the aggravating circumstances alleged in the charging information against Gregory Anthony Rouster, and

2. that any mitigating circumstances that exist for Gregory Anthony Rouster are outweighed by one or more of the aggravating circumstances for Gregory Anthony Rouster.

INSTRUCTION NO. 8

In the second phase of this trial, the burden is upon the State to prove to you beyond a reasonable doubt the aggravating circumstance set forth in the charging information wherein the State is seeking the death penalty. . . .

A "reasonable doubt" is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. . . .

INSTRUCTION NO. 9

You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. . . .

. . . .

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. . . . You should give the greatest

dence that the law which applies is that law in effect at the time the crime is committed. *Smith v. State,* 675 N.E.2d 693, 695 (Ind.1996); *see also* Pub.L. No. 332–1987, § 3, 1987 Ind. Acts 3040, 3043 (amending Ind.Code § 35–50–2–9 but stating, "[t]his act does not apply to a case in which a death sentence has been imposed before September 1, 1987.").

weight to that evidence which convinces you most strongly of its truthfulness.

## INSTRUCTION NO. 12

I have prepared and submit forms of verdict to meet all phases of this case, which you may use; when you have reached your verdict, have it signed by your foreman and return it into open court. Your verdict must be unanimous....

(T.R. at 169A, 170A, 172A, 173A, 176A.)

Rouster argues that because the jury was instructed that their verdict had to be unanimous, they likely believed they were required to find mitigating factors unanimously before they could consider such mitigators in the their mitigating factors/aggravator factors balancing process.

Rouster bases his argument on the decisions in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). He rightfully does not argue that Indiana's death penalty sentencing scheme is unconstitutional. *See Harrison v. State*, 644 N.E.2d 1243, 1259 (Ind.1995), *cert. denied* 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996) (holding that Ind.Code § 35–50–2–9 (1988) complies with Eighth Amendment requirements as elucidated in *Mills*). Instead, he argues the actual sentencing instructions given by the trial court were constitutionally invalid because the instructions may have misled the jury into believing they were required to find mitigating factors unanimously.

In *Mills*, the Court held that Maryland's death penalty sentencing scheme was constitutionally invalid because there was a substantial probability that reasonable jurors, upon receiving the judge's instructions, and in attempting to complete the verdict forms given them by the court, may have thought they were precluded from considering any mitigating evidence unless all twelve jurors agreed on the existence of a particular mitigating circumstance. *Mills*, 486 U.S. at 384, 108 S.Ct. 1860. In *McKoy*, the Supreme Court applied *Mills* in finding North Carolina's death penalty scheme similarly unconstitutional. *McKoy*, 494 U.S. at 439, 110 S.Ct. 1227. While both of these cases dealt with state-wide sentencing procedures, the holding of *Mills* applies to instructions given by individual courts as well since the Court stated that for Eighth Amendment purposes the cause of a juror's confusion is irrelevant. *Mills*, 486 U.S. at 375, 108 S.Ct. 1860. The issue of concern is whether a sentencer might have failed to consider all the mitigating evidence and thereby have unconstitutionally imposed the death penalty. *Id.* Accordingly, the critical question is whether jurors in Rouster's case could have reasonably believed they could not consider mitigating factors in balancing the aggravators and mitigators unless they unanimously found these mitigating factors existed. *Id.* at 375–76, 108 S.Ct. 1860.

We are satisfied the jurors were not misled. Only the court's final instruction mentioned unanimity, stating, "[y]our verdict must be unanimous." (T.R. at 176A.) Other instructions given at the sentencing phase indicated to jurors that they, individually, were responsible for considering the evidence. (*See* Instructions 8 & 9, T.R. at 172A, 173A.) Only an instruction to jurors which explicitly directed them to consider Rouster's mitigating factors independently, and directed them that they were not required to find such factors unanimously before considering them in their aggravating/mitigating factors balancing, would have been less ambiguous.[13] We do not believe that any reasonable juror could have concluded that she was obligated to unanimously agree upon mitigating factors with her fellow jurors before she could consider them in her balancing process.

---

**13.** In contrast, the sentencing schemes struck down in *Mills* and *McKoy* actually appeared to require the jury to find mitigating factors unanimously. In *Mills*, jurors were given a sentencing form which stated in part: "Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by a preponderance of the evidence...." *Mills*, 486 U.S. at 387, 108 S.Ct. 1860 (emphasis omitted). In *McKoy*, the written verdict form given the jury asked them: "Do you unanimously find from the evidence the existence of one or more of the following mitigating circumstances?" *McKoy*, 494 U.S. at 436, 110 S.Ct. 1227.

We have considered the errors that Rouster claims his trial counsel made during pre-trial, at the guilt phase of his trial, and at sentencing. We conclude that counsels' performance was not ineffective during any of these stages of trial, nor was their performance ineffective when we consider Rouster's claims cumulatively.

## II. Adequacy of Lake County Public Defender System

Rouster asserts he was denied his right to effective assistance of counsel because of systemic defects within the Lake County system of providing public defender services for indigent capital defendants. As an offer of proof the post-conviction court received as an offer of proof a report that Rouster asserts demonstrates these flaws. The court did not admit the report into evidence because it concluded that Rouster's claim was waived on post-conviction as it related to his ineffective assistance of trial counsel claim. The court alternatively determined the report was inadmissible because it concluded that the report contained no information about the performance of the public defender in Rouster's case.

We recently resolved an identical claim, holding against the claimant. *See Coleman v. State*, 703 N.E.2d 1022 (Ind.1998); *Brown v. State*, 698 N.E.2d 1132 (Ind.1998); *Roche v. State*, 690 N.E.2d 1115 (Ind.1997). So we say here.

## III. False Evidence

■ Rouster claims that evidence presented against him was false and that the prosecutors of his case knew or should have known as much. Specifically, he asserts that the police found Mrs. Rease's body on a bed in the bedroom and that a photograph admitted to the jury showing Mrs. Rease's body wedged between a dresser and the bed misrepresented the crime scene. He contends that whether Mrs. Rease was found on the bed or on the floor is a crucial fact because the State argued the bedroom was ransacked to show the murders occurred in the course of a robbery. In considering Rouster's claim, the post-conviction court wrote:

> At trial, certain photographs admitted into evidence were represented to the jury as accurate depictions of the crime scene

as the police officers first found it. One of the pictures showed the body of Mrs. Rease on its side and wedged between a bed and a chest of drawers. Officer Rita Dorsey, a police officer who found the body, testified to the petitioner's jury that Mrs. Rease's body was found on the floor of the rear bedroom and the bedroom had been ransacked. Based on the contents of an offense report prepared by Officer Busee Smith and the testimony of Officer Michael Grault (two other police officers at the crime scene), the petitioner alleges that the body of Mrs. Rease was found on the bed and not as depicted to the jury. The petitioner claims this was significant because the state referred to the position of the body in closing arguments during the penalty phase.

We find that the body was almost certainly in the position depicted to the jury when the officers came on the scene. We conclude that the prosecuting attorney did not present evidence which he knew or should have known was false and that the position of the body was not material to the petitioner's judgments of conviction or death sentence. The evidence presented by the petitioner in an attempt to show that the body was on the bed or in a position other than that depicted to the jury was not nearly as persuasive as the testimony of Officer Dorsey at the hearing on the petition for postconviction relief. Her testimony and the photograph itself convince us that the body was not moved before it was photographed. More importantly, however, the position of the body was only mentioned by the prosecuting attorney when comparing the attack on the Reases with a prior robbery committed by codefendant Williams. The argument was meant to bolster the allegation that a robbery was intended by the perpetrators who attacked the Reases. In this respect, it was the fact that the mattress had been turned up that was significant. The petitioner argues that the mattress could not have been found turned up if Mrs. Rease's body was on top of the bed. Because the fact that the bedroom had been ransacked and the mattress turned up was only part

of the evidence which established the robbery component of the offense, we conclude that the testimony on the position of the body was not material to the petitioner's judgements of convictions or death sentence. Thus, a fundamental error did not exist.

(P–C.R. at 1201–02 (footnotes omitted).) We consider Rouster's argument with these findings by the post-conviction court in mind.

Rouster acknowledges that because he is appealing from a negative judgment of a post-conviction court, it is now his burden to convince us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that which the post-conviction court reached. To meet this burden, Rouster offers us the testimony of Officers Michael Gault and Rita Dorsey Allen. The testimony of Officer Gault which Rouster claims proves that evidence was falsified follows, beginning with an answer by Officer Gualt:

A. I did look in through the southeast bedroom window, and I saw a woman who was laying over something.

Q. And when you looked in the window, were you able to tell exactly what she was lying over?

A. No, but she was elevated. She was not laying on the floor; she was elevated.

. . . .

. . . I guess it would be about 25 inches off the ground.

. . . .

Q. Kind of a sitting position or laying position?

A. No. I refer to it like this way, your Honor, in the old cowboy pictures, when they brought somebody in who had been killed, he was thrown across a horse. She was in that type of position right there.

. . . .

Q. Did you observe what the deceased female was bent over on?

A. Might have been a dresser.

Q. Was it a bed?

A. I don't think so. I believe it was more like a dresser.

A. Was it a small roller bed?

Q. Counselor, again, to the best of my recollection, she was laying on the edge of the dresser.

(P–C.R. at 1582–83; 1588–89.)

After we compare these statements with the photograph Rouster asserts the prosecution knowingly admitted as false evidence, we believe Gault's testimony not only fails to negate, but actually substantiates the veracity of the evidence in question. (*Compare* Officer Gault's Testimony, P–C.R. at 1583–1589, *with* the questioned photograph, T.R. at 1307.) Officer Allen's testimony also fails to show evidence was manipulated or misrepresented. At the post-conviction hearing, she testified that the questioned photograph depicted the position of Mrs. Rease at the time she was first found by police to the best of her recollection. (P–C.R. at 1894–95.) This evidence simply does not come close to "unerringly and unmistakably" leading us to a decision opposite that reached by the post-conviction court.

### IV. Trial Court's Pre-sentence Questionnaire

Because the facts which follow were discovered after Rouster's post-conviction procedure was concluded, we rely on the information provided by appellant's brief and on questions which we ordered to be answered by Judge Letsinger on June 13, 1997.

On February 24, 1987, Gregory Rouster apparently filled out a psychological questionnaire [14] to aid the Lake County Probation Department in compiling his pre-sentence investigation report. Our pre-sentence investigation procedure in place at the time required the court to furnish the defendant with the factual contents gathered through

---

**14.** The questionnaire used by Judge Letsinger is three pages long and its questions are modeled after the Minnesota Multiphasic Personality Inventory. It asks for yes or no responses to assertions such as; "It would be better if almost all laws were thrown away", "My hardest battles are with myself", and "I am certainly lacking in self-confidence." (*See* App. to Appellant's Br. at 34.)

that process so that he may have a fair opportunity to controvert any included material. Ind.Code Ann. § 35–38–1–12(b) (West 1986). A trial attorney who worked on Rouster's case, Noah Holcomb, provided an affidavit in late 1996 which states that he was not informed at the time of Rouster's sentencing that Rouster had been required to complete the questionnaire. Holcomb also states he was not given a copy of the questionnaire as it had been answered by Rouster. Judge Letsinger, when asked whether Rouster's trial counsel or Rouster himself received a copy of the questionnaire, replied:

> The questionnaire is an attached exhibit to the pre-sentence investigation report in every criminal case in which I pass sentence. In indigent cases, that report is routinely provided to counsel for the defendant one (1) or two (2) days before the date of sentencing by leaving copies in the office of the Lake County Public Defender. I receive the report on the same day they do. Again I have to rely on routine practice to answer the question in the affirmative. No one representing the Appellant suggested to this court at sentencing in 1987 that they had not been provided with the pre-sentence report. Appellant's lead counsel was Robert L. Lewis, not Noah L. Holcomb. It could have been true that Mr. Holcomb never even saw the pre-sentence report. The practice is to prepare only (1) copy per defendant.

(Judge Letsinger's Responses to Questions by Order of the Supreme Court of Indiana, June 13, 1997.) [15] Rouster claims the court's failure to provide his trial counsel with the contents of this psychological test violated his federal and state due process rights.[16]

■ We recently considered the issue of Judge Letsinger's pre-sentence questionnaire in *Matheney v. State*, 688 N.E.2d 883, 908–10 (Ind.1997), *petition for cert. filed* (Aug. 28, 1998) (No. 98–5867). In *Matheney*, we reviewed the aggravating and mitigating factors absent the psychological questionnaire to determine whether the death sentence was appropriate. *Id.* Because the circumstances we confront here are procedurally identical, we will engage in the same type of review.

The aggravating circumstances charged by the State were that Rouster:

1. Intentionally killed John Rease during the commission or attempted commission of a knowing or intentional taking of property . . .

and/or

2. Intentionally killed Henrietta Rease during the commission or attempted commission of a knowing or intentional taking of property . . .

and/or

3. [Has] been convicted of the murder of John Rease and Henrietta Rease.

(T.R. at 167A.) Because all of these aggravating factors relate directly and solely to facts present at the time of the crimes, the psychological questionnaire could not have been used by the judge in considering or weighing these aggravators. The answers given by Rouster in that document were completely irrelevant to whether any of the

---

**15.** The questions asked of Judge Letsinger and his answers relevant to our opinion are as follows:

Question 1: Before sentencing Appellant, did you review the questionnaire he completed? Answer: Yes, I think so. I have no independent recollection of reading this particular questionnaire but it was, and is, my practice to do so.
 . . . .
Question 3: Did you rely on Appellant's responses to the questionnaire when sentencing him? If so, please explain. Answer: This case is now over ten (10) years old. For that reason it is impossible to even say I read the questionnaire. My answer to that [question] was based on common practice.

It was, and is, my common practice to specifically refer to particular answers on the record at sentencing. In the case of death penalty findings I would specifically refer to answers if I were to rely on them for a specific finding. There were no references to the questionnaire in the findings. I conclude I did not rely on any answer or series of answers.
(Judge Letsinger's Responses to Questions by Order of the Supreme Court of Indiana, June 13, 1997.)

**16.** Rouster asserts his rights were violated under article 1, section 13 and article 1, section 16 of the Indiana Constitution but he provides us with no argument. Accordingly, these claims are waived. *See* Ind.Appellate Rule 8.3(A)(7).

three charged factors existed in fact. We further note, as fully discussed in our previous opinion, that there was substantial evidence proving all three aggravating factors beyond a reasonable doubt. *Rouster*, 600 N.E.2d at 1350. Indeed, there was so much evidence that Rouster himself, on direct appeal, conceded there was sufficient evidence to prove the aggravating factors beyond a reasonable doubt. *Id.*

The existence of the third aggravating factor is unassailable: Rouster had been convicted of killing more than one person, namely John Rease and Henrietta Rease, at the guilt phase. The evidence also supports the conclusion that Rouster intentionally killed the Reases while engaging or attempting to engage in a robbery. Here, Rouster's specific intent is proven by facts which show that the plan to rob the Reases originated in Rouster's mind and that he and co-defendant Williams acted as a team in robbing and then killing the Reases.[17]

Justice DeBruler, dissenting on direct appeal, opined that we should have considered two ameliorative factors present within the aggravating facts. *Rouster*, 600 N.E.2d at 1352 (DeBruler, J., dissenting). First, Justice DeBruler felt that we should have more strongly considered that the Reases were armed and were warned of the pending danger when Rouster and Williams yelled and fired twice outside the house before entering a second time. *Id.* Second, he argued that greater account should have been taken of the possibility that Rouster believed the Reases had deprived him of six dollars of monthly support payments intended for Rouster's clothing, and that Rouster first discussed this matter with the Reases, even allowing himself to be thrown out of the house though he was armed, before eventually resorting to violence. *Id.* While the facts identified by Justice DeBruler tend somewhat to distinguish Rouster's acts from those of a truly cold-blooded murderer, they are not so ameliorative as to outweigh the proven aggravating factors.

The possible mitigating factors also validate the recommendation of the jury. The evidence on the trial and post-conviction records soundly refutes Rouster's assertion that he was unable to form the required mens rea or that he was unable to appreciate the criminality of his conduct due to mental disease or defect. (*See* discussions *supra* Parts I.B.1 and I.B.2.) The facts also demonstrate that Rouster was not dominated by his co-defendant Williams, nor was Rouster under the influence of extreme emotional disturbance at the time of the crime. Rouster's unstable environment as a youth is worthy of consideration as a mitigating factor, but this mitigator is in the low range.

Accordingly, we find the aggravating factors in Rouster's case outweighed the mitigating factors beyond a reasonable doubt.

## V. Post–Conviction Due Process

Rouster asserts the cumulative effects of procedural irregularities at his post-conviction hearing caused him to be denied due process.

First, Rouster argues that his petition to remove Magistrate T. Edward Page should have been granted. Originally, Judge James Letsinger was to hear Rouster's post-conviction proceeding, but Rouster filed a motion for change of venue. Rouster's motion was granted and Judge Richard Conroy was assigned to the proceedings. Magistrate Page continued to participate in Rouster's case and to monitor the proceedings as he does for all the judges of the criminal division. We denied an identical claim in *Coleman*, 703 N.E.2d at 1022, and we do so here.

Second, Rouster argues that his November 29, 1995, motion for leave to amend his second amended petition for post-conviction relief should not have been denied by the post-conviction court. He claims evidence showing Rouster's mother was a heroin abuser and that her use of heroin while pregnant

---

**17.** For capital punishment to be precluded under the Eighth Amendment of the Federal Constitution, it must be the case that the defendant neither took a life, attempted to take a life, nor intended to take a life. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Major participation in the felony committed combined with reckless indifference to human life is sufficient to satisfy the *Enmund* culpability requirement. *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

could have subjected him to neurological deficiencies was not admitted in violation of his due process rights. The denial of Rouster's motion was within the discretion of the post-conviction court. The evidence Rouster wished to present was cumulative. (*See* discussion *supra* Part I.B.1.)

Third, Rouster argues his motion to be present during his post-conviction evidentiary hearing should have been granted. Rouster argues that his presence would have substantially assisted his counsel during the hearing. However, he cites no law indicating he was deprived of a statutory or constitutional right due to the court's failure to grant his motion, nor does he argue it was an abuse of the judge's discretion to deny his motion. This is no basis for reversal.

### Conclusion

We affirm the judgment of the post-conviction court.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.