## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 07 2015, 10:05 am
CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Quentin J. Abbott | Gregory F. Zoeller |
| Carlisle, Indiana | Attorney General of Indiana |
| | |
| | Michael Gene Worden |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Quentin J. Abbott, | October 7, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 34A05-1412-PC-604 |
| v. | Appeal from the Howard Circuit Court |
| State of Indiana, | The Honorable Lynn Murray, Judge |
| *Appellee-Respondent.* | Cause No. 34C01-1203-PC-57 |

**Najam, Judge.**

# Statement of the Case

Quentin Abbott appeals the post-conviction court's denial of his amended petition for post-conviction relief. Abbott raises four issues for our review:

1. Whether the trial court denied him due process of law.

2. Whether the prosecutor committed misconduct that denied him due process of law.

3. Whether he received ineffective assistance of trial counsel.

4. Whether he received ineffective assistance of appellate counsel.

We affirm.

# Facts and Procedural History

The facts underlying Abbott's conviction for murder, a felony, were set out in this court's decision on his direct appeal:

> Mark Methene, a crack cocaine dealer recently released from prison, owed Abbott approximately $800. Abbott complained of this debt to others. On June 6, 2001, Marcus Herron picked up Abbott and Dariel Jones and drove around Kokomo. Abbott asked Herron to stop at another person's home, where he retrieved a shotgun and a box of shells. As the trio neared Studebaker Park, Abbott loaded the shotgun with a single shell.
>
> Methene was playing dice in the park when Abbott exited the car with the shotgun. Herron told Abbott not to do anything stupid. Abbott approached Methene, who had money in his hand, and demanded repayment of the debt. Methene refused, argued with

Abbott, and fled. Methene then turned and faced Abbott, stating, "[B]itch, you gonna have to fight me for this money now, because you done approached me with a gun; you don't—you a ho, you a bitch[.]" Tr. at 406. Methene ran back toward the dice game area. Abbott aimed the shotgun at Methene and fired, striking him in the back at close range. Methene later died from this wound.

Abbott fled and flagged down his companions. Abbott remarked, "I told him to stop playing my money." *Id*. at 411. Shortly thereafter, Abbott told another person, "I just shot that nigger, Mark G, in the back." *Id*. at 416. At Abbott's request, Herron drove him to Marion.

*Abbott v. State*, No. 34A04-0307-CR-322, slip op. at *2-*3 (Ind. Ct. App. Jan. 30, 2004) ("*Abbott I*").

[4] The State charged Abbott with murder and sought life imprisonment without parole. At the jury trial, the State elicited testimony that, on June 6, 2001, witnesses saw Abbott at the crime scene pointing a gun at Methene, heard a gunshot, and subsequently saw Methene with a gunshot wound. One eyewitness, Derrick Green, testified that he saw Abbott shoot Methene. Another witness, Dariel Jones, recanted his prior out-of-court sworn statement to police wherein he identified Abbott as the shooter. Jones said his prior statement was false and coerced. Jones' prior statement was read to the jury pursuant to Indiana Rule of Evidence 803(5) as a "recorded recollection" exception to the rule against hearsay.

[5] The jury found Abbott guilty of murder. The jury recommended against a sentence of life without parole, and the trial court entered an order denying that sentence. On June 4, 2003, after weighing aggravating and mitigating factors, the trial court sentenced Abbott to sixty years[1] executed. The court based the five-year enhancement on several aggravating factors, including Abbott's extensive juvenile record and criminal history and his continued criminal behavior even after receiving extensive rehabilitation services through the juvenile and probation systems. The trial court noted that those aggravating factors demonstrated an "escalating pattern of non-compliance with society's laws and rules" and found that Abbott was "in need of rehabilitative and correctional treatment that can best be provided by commitment to a penal facility." Direct Appeal App. at 251.

[6] Abbott appealed his conviction on the sole ground that the State failed to negate the presence of "sudden heat" beyond a reasonable doubt.[2] This court affirmed the trial court's judgment. *Abbott I*, slip op. at *5. On March 15, 2012, Abbott filed his Petition for Post-Conviction Relief, which he subsequently amended. In his amended petition, Abbott raised numerous allegations of prosecutorial misconduct, trial court abuse of discretion, ineffective assistance of trial

---

[1] The statutory sentence for murder at the time of Abbott's sentencing was "a fixed term of fifty (50) to fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances and not more than ten (10) years subtracted for mitigating circumstances." Ind. Code § 35-50-2-3 (2000).

[2] "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder . . . to voluntary manslaughter." Ind. Code § 35-42-1-3(b) (2000).

counsel, and ineffective assistance of his direct-appeal counsel. A hearing on Abbott's petition was held on September 26, 2014. On December 1, 2014, the post-conviction court denied Abbott's petition. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[7] Abbott appeals the post-conviction court's denial of his amended petition for post-conviction relief. Our standard of review is clear:

> [The petitioner] bore the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues, [the petitioner] must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post[-]conviction court. *Harrison v. State*, 707 N.E.2d 767, 773 (Ind. 1999) (citing *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind. 1995)). We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post[-]conviction court. *Id*. at 774.

> Post[-]conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post[-]conviction rules. P C.R. 1(1); *Rouster*, 705 N.E.2d at 1003. If an issue was known and available, but not raised on direct appeal, it is waived. *Rouster*, 705 N.E.2d at 1003. If it was raised on appeal, but decided adversely, it is res judicata. *Id*. (citing *Lowery v. State*, 640 N.E.2d 1031, 1037 (Ind. 1994)). If not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a post[-]conviction proceeding.

*Woods v. State*, 701 N.E.2d 1208, 1215 (Ind. 1998). A claim of ineffective assistance of appellate counsel is also an appropriate issue for post[-]conviction review. As a general rule, however, most free-standing claims of error are not available in a post[-]conviction proceeding because of the doctrines of waiver and res judicata. Some of the same contentions, to varying degrees, may be properly presented in support of a claim of ineffective assistance of trial or appellate counsel.

*Timberlake v. State*, 753 N.E.2d 591, 597-98 (Ind. 2001).

### Issue One: Precluded Claims

Because both the claims of prosecutorial misconduct and trial court abuse of discretion were known and available, but not raised, in Abbott's direct appeal, those claims are waived. *Id.* at 597 (citing *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999)). However, Abbott's claims of ineffective assistance of trial and appellate counsel are properly before us for review. *Id.*

### Issue Two: Ineffective Assistance of Trial Counsel

Abbott argues that his trial counsel was ineffective. As our supreme court has noted:

This Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the

defendant by the Sixth Amendment, *id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002).

[10] We will not second-guess trial counsel's strategy and tactics unless they are so unreasonable that they fall outside objective standards. *See, e.g.*, *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Wentz*, 766 N.E.2d at 361. And if a claim of ineffective assistance of counsel can be disposed of by analyzing the prejudice prong alone, we will do so. *Benefield*, 935 N.E.2d at 797 (citing *Wentz*, 766 N.E.2d at 360).

[11] Abbott's ineffective assistance of trial counsel claims allege that his counsel was ineffective for failing to object at certain points in the trial. Specifically, he claims his trial counsel was ineffective for: (1) failure to object to the admission of Jones' out-of-court statement; (2) failure to object to the trial court's identification of aggravating factors; (3) failure to object to the identification of the aggravator that Abbott needed treatment in a penal facility; (4) failure to object to the State questioning alluding to robbery; and (5) failure to object to

the prosecutor's statements in closing argument. "In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure." *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001).

### 1. Failure to Object to Admission of Out-of-Court Statement

[12] Abbott alleges that his trial counsel was ineffective for failing to thoroughly and properly argue his objection to what Abbott refers to as Exhibit 21[3], which is an audio recording of State's witness Dariel Jones' out-of-court, sworn statement given to the police on June 20, 2001. However, we need not address whether his counsel's objection was ineffective because Abbott cannot show that he was prejudiced by any such alleged error. In Jones' June 20 statement he said that he saw Abbott pointing a gun at Methene, heard a gunshot, and then saw Methene fall to the ground. But there were several other eye-witnesses who testified to these same facts. And, although no one but Jones said they heard Abbott say that Abbott shot Methene, one eye-witness testified that he actually saw Abbott shoot Methene. Thus, there was ample evidence to support the jury verdict, and it is highly unlikely, much less probable, that the result of the trial

---

[3] Although both parties and the post-conviction court refer to Jones' June 20, 2001, out-of-court statement as "Exhibit 21," it was not actually admitted as an exhibit; rather, it was read into evidence without either the recording or a transcription of the recording being admitted as an exhibit.

would have been different but for trial counsel's alleged failure to properly object to Jones' June 20 out-of-court statement.

### 2. Failure to Object to Trial Court Findings of Aggravating Factors

[13] Abbott argues that his counsel was ineffective for failing to object to the trial court's enhancement of his sentence based on aggravating factors not found beyond a reasonable doubt by a jury as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). [4] The United States Supreme Court held in *Apprendi* that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Id*. at 490. Four years later, in *Blakely v. Washington*, the Court clarified the *Apprendi* rule by stating that "statutory maximum" means

> the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

---

[4] Abbott also cites Article 1, Section 19 of the Indiana Constitution as support for this argument. Article 1, Section 19 provides: "In all criminal cases whatever, the jury shall have the right to determine the law and facts." Abbott provides no record evidence or legal authority relating to this state constitutional claim, nor does he provide any cogent argument as to how this provision applies to his sentencing. Therefore, his claim under Art. 1, § 19 is waived. Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on."); *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (noting failure to support arguments with appropriate citations to legal authority and record evidence waives those arguments for our review).

542 U.S. 296, 303-304 (2004) (internal citations omitted).  Thus, under *Blakely*, the trial court would not have been permitted to enhance Abbott's sentence beyond fifty-five years unless such enhancement was based on facts found by the jury beyond a reasonable doubt.[5]

Here, however, the trial court did not engage in impermissible fact-finding when it enhanced Abbott's sentence.  A defendant's juvenile record and criminal history need not be found by a jury to be utilized by a trial court as an aggravating circumstance.  *Freeze v. State*, 827 N.E.2d 600 (Ind. Ct. App. 2005); *see also Teeters v. State*, 817 N.E.2d 275, 279 (Ind. Ct. App. 2004) (holding that prior criminal convictions "have already been proven beyond a reasonable doubt and are thus exempt from the *Apprendi* rule"), *trans. denied*.  Likewise, the sentencing aggravator that Abbott was in need of correctional or rehabilitative treatment that could best be provided by commitment to a penal facility was derivative of the criminal history aggravator; thus, it also did not implicate *Apprendi* and *Blakely*.  *Teeters*, 817 N.E.2d at 279; *see also Gillem v. State*, 829 N.E.2d 598, 606 (Ind. Ct. App. 2005) (holding that the aggravating factor of need for corrective treatment that can best be provided in a penal facility did not

---

[5] However, prior to *Blakely*, *Apprendi* had not been interpreted to prohibit a trial court from finding additional facts to enhance a sentence within the statutory maximum, which was sixty-five (65) years with enhancement in Abbott's case. *Smylie v. State*, 823 N.E.2d 679, 682-683 (Ind. 2005).  And the Indiana Supreme Court has held *Blakely* only applies retroactively to cases that were pending at the trial court or on direct appeal at the time *Blakely* was decided, i.e., June 24, 2004. *Id*.  At that time, Abbott had already been convicted and sentenced, and his direct appeal had already been decided against him.  Thus, *Apprendi/Blakely* would not have prohibited the trial court from finding additional facts to enhance Abbott's sentence by up to ten years in any case.  But, for the sake of argument, we nonetheless address Abbott's *Apprendi/Blakely* claim.

implicate *Blakely* because it was derived from the defendant's criminal history), *trans. denied*. Thus, the *Apprendi/Blakely* cases are not implicated here, and trial counsel was not ineffective for failing to object on the basis of that authority.[6]

### 3. Failure to Object to Use of Aggravator that Abbott Needs Treatment in a Penal Facility

[16] Abbott claims that his trial counsel was ineffective for failing to object to the trial court's finding as an aggravator that Abbott was in need of rehabilitative and correctional treatment best provided by commitment to a penal facility.[7] In support of this proposition Abbott cites *Prickett v. State*, 856 N.E.2d 1203 (Ind. 2006), in which our supreme court held that a trial court finding that a defendant will best be served by treatment in a penal facility must include an explanation as to how the enhancement relates to and would achieve the goal of correctional and rehabilitative treatment. *Id*. at 1208.

[17] But, contrary to Abbott's assertions, the trial court's sentencing statement here contains exactly such an explanation. The trial court found the aggravator of need for treatment in a penal facility only after (1) detailing Abbott's extensive juvenile record and criminal history and his probation violations; (2) noting that

---

[6] Moreover, our supreme court has held that *Blakely* created a new rule of criminal procedure such that neither a trial nor appellate lawyer would be "ineffective for proceeding without making a *Blakely* claim before *Blakely* was decided." *Smylie*, 823 N.E.2d at 690.

[7] Abbott also alleges, incorrectly, that the trial court improperly identified the aggravator that the imposition of a lesser sentence would depreciate the seriousness of the crime. The trial court identified no such aggravator.

"[e]fforts to dissuade the Defendant from committing offenses and crimes [have] failed, despite he [sic] having received intensive services in probation, juvenile detention, and Boys['] School, and having been incarcerated in jail"; and (3) observing that Abbott has an "escalating pattern of non-compliance with society's laws and rules." Direct Appeal App. at 251. Given this detailed explanation of the facts justifying the use of the aggravator, the trial court did not err and, thus, trial counsel did not err in failing to object.[8] *See Gillem*, 829 N.E.2d at 604 (holding that the trial court had properly used the aggravator of need for treatment in a penal facility where the court noted that the prior attempts of probation and court ordered counseling had been unsuccessful).

### 4.    *Failure to Object to State Questioning Alluding to Robbery*

[18]    Abbott argues that his trial counsel was ineffective for failing "to object to the State repeatedly pursuing a line of questioning that alluded to robbery." Appellant's Br. at 19. Abbott claims this line of questioning was improper because he was never charged with robbery and/or felony murder. However, Abbott provides no citation to the record or authority to support his allegation. An argument on appeal "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of

---

[8] Moreover, Abbott's enhanced sentence would have been proper based on his extensive juvenile delinquent and criminal history alone. "[O]nly one valid aggravating circumstance is necessary to support an enhanced sentence." *Johnson v. State*, 725 N.E.2d 864, 868 (Ind. 2000).

the Record on Appeal relied on." Ind. Appellate Rule 46(A)(8)(a). Failure to support arguments with appropriate citations to legal authority and record evidence waives those arguments for our review. *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015). Although we prefer to resolve cases on the merits instead of procedural grounds like waiver whenever possible, Abbott's complete lack of citation to anything at all renders his non-compliance with Appellate Rule 46(A)(8)(a) so substantial as to prevent our consideration of the issue. *Id*. Abbott has waived this claim.

### 5. *Failure to Object to Prosecutor's Statements in Closing Argument*

[19] Finally, Abbott alleges that his trial counsel was ineffective for failing to object to four statements made by the prosecutor in his closing and reply arguments. While the prosecutor certainly engaged in zealous advocacy here, none of his statements constituted misconduct. And, even if they did, Abbott has provided no evidence of prejudice to him from the failure to object to these statements.

[20] In his initial closing statement, the prosecutor implied that some witnesses recanted their earlier statements because "they have to live under the worry and threat from repercussions of their testimony here today." Tr. at 474. Abbott claims this statement was impermissible and constitutes prosecutorial misconduct to which his counsel should have objected. However, a prosecutor's final argument may "state and discuss the evidence and *reasonable inferences derivable therefrom* so long as there is no implication of personal knowledge that is independent of the evidence." *Hobson v. State*, 675 N.E.2d

1090, 1096 (Ind. 1996) (emphasis added). Here, there was evidence in the record that some witnesses were reluctant to testify, that some witnesses had to be reminded of prior sworn statements, and that at least one witness had been "threatened on the streets" and was afraid of "being known as a snitch." Tr. at 424-25. The prosecutor's statement was a reasonable inference derived from that evidence.

[21] In his closing argument, the prosecutor also stated that Abbott had acted "coldly, brazenly, [and] calculatingly" in shooting Methene, *id.* at 476; that Abbott had "calculate[d] his move," *id.* at 486-87; and that "[t]his is a cold blooded murder, period," *id.* at 487. Abbott claims it was impermissible for the prosecutor to state his opinion in this way. Yet, a final argument "need not consist of a bland recitation of the evidence devoid of thought-provoking illustration." *Clark v. State*, 597 N.E.2d 4, 10 (Ind. Ct. App. 1992), *trans. denied*. Here, the prosecutor was using dramatic language to restate the intent requirement for murder, i.e., that the murder was done knowingly and intentionally. It is the prosecutor's job to present a persuasive final argument. *See, e.g.*, *Bowles v. State*, 737 N.E.2d 1150, 1154 (Ind. 2000) (holding trial court did not abuse its discretion in allowing prosecutor, in his closing argument, to read a poem about a cockroach and compare the defendant to the cockroach); *Mahal v. State*, 496 N.E.2d 568, 572 (Ind. 1986) (finding prosecutor's closing statement to jury that they should "not allow [defendant] to prey upon others" and "not allow [defendant] to get to Jason or any other children" was "within the ambit of reasonable prosecutorial advocacy"). Moreover, "statements of

opinion are not prohibited" in closing arguments. *Gregory v. State*, 885 N.E.2d 697, 708 (Ind. Ct. App. 2008), *trans. denied*. Trial counsel was not ineffective for failing to object to these statements by the prosecutor.

[22] In his rebuttal closing argument, the prosecutor told the jury, "if you buy the power point presentation and you find Quentin Abbott guilty of Voluntary Manslaughter, you have just rendered a verdict that says that he is excused for murdering Mark Methene, that he had a reason or an excuse to shoot him down in cold blood, period." Tr. at 485. He also stated to the jury, "if you asked Mark Methene whether he was voluntarily manslaughtered, I think he would take great exception to that. He would say to you, Ladies and Gentlemen, that June 6th Quentin Abbott knowingly and intentionally shot me in the back and killed me, period, with no excuses." *Id.* at 486. Abbott alleges these statements constitute prosecutorial misconduct to which his counsel should have objected. However, these statements were made in response to Abbott's closing argument that he should have been convicted of voluntary manslaughter rather than murder. "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006).

[23] Moreover, even if the prosecutor's statements constituted misconduct, Abbott has provided no evidence that his trial counsel's failure to object to these statements caused him any substantial prejudice. Abbott has not shown that

there is a reasonable probability that, but for his trial counsel's failure to object, the result of his trial would have been different. Rather, the record contains ample eye-witness testimony that could support the jury's verdict regardless of the prosecutor's statements in closing argument.

### Issue Three: Ineffective Assistance of Appellate Counsel

Abbott raises six claims of ineffective assistance of appellate counsel: (1) failure to raise claims of prosecutorial misconduct regarding the line of questioning about robbery; (2) failure to raise claims of trial court abuse of discretion for refusing to instruct the jury on lesser included offenses of reckless homicide and involuntary manslaughter; (3) failure to raise claims regarding sentencing; (4) failure to raise claims that Jones' prior out-of-court statement was inadmissible hearsay; (5) failure to raise claims of prosecutorial misconduct in closing argument; and (6) failure to adequately argue that there was insufficient evidence to prove Abbott did not act under "sudden heat."

The standard of review for these claims is the same as for allegations of ineffective assistance of trial counsel; that is, the defendant must show counsel's performance fell below an objective standard of reasonableness, and, but for the deficient performance of counsel, there is a reasonable probability that the result of the proceeding would have been different. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014) (citing *Strickland*, 466 U.S. at 687-88, 694). Ineffective assistance of appellate counsel claims generally fall into one of three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present

issues well. *Montgomery v. State*, 21 N.E.3d 846, 854 (Ind. Ct. App. 2014), *trans. denied*.

[26] Five of Abbott's ineffective assistance of appellate counsel claims fall into the second category, waiver of issues. "Ineffectiveness [under this category] 'is very rarely found' because 'the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel,' and . . . 'reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable.'" *Id.* (quoting *Bieghler v. State*, 690 N.E.2d 188, 193-94 (Ind. 1997)). In analyzing a waiver-of-issues claim, the court first must determine whether the unraised issues were significant and obvious upon the face of the record. *Id.* If so, the court then compares these unraised obvious issues to those raised by appellate counsel, finding deficient performance only when ignored issues are clearly stronger than those presented. *Id.* The court "should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Bieghler*, 690 N.E.2d at 194. And, of course, appellant counsel will not be faulted for failing to raise what would have been a meritless claim. *Overstreet v. State*, 877 N.E.2d 144, 167 (Ind. 2007).

> 1. *Failure to raise claim of prosecutorial misconduct regarding line of questioning about robbery*

[27] Abbott again alleges that it was error for the prosecutor to ask questions about robbery because Abbott was not charged with robbery. As noted previously, Abbott has waived this claim by failing to provide citation to any authority or record evidence as support. *Pierce*, 29 N.E.3d at 1267; App. R. 46(A)(8)(a).

[28] However, in his ineffective assistance of appellate counsel claim (unlike in his claim regarding trial counsel), Abbott does cite to his "6th Amendment right to be informed of the nature and cause of the accusation against him and to prepare a defense," claiming he had no notice of being charged with robbery. Appellant's Br. at 23. He also alleges that the "5th Amendment guarantees the accused that he will not be tried for offenses not presented in the charging information," and that this right was violated when he was "convicted of a crime different than that charged." *Id*.

[29] Abbott's claims regarding "robbery" all stem from Abbott's mistaken belief that he was convicted of robbery and/or felony murder. Abbott provides no citation to the record in support of this belief and, in fact, the record contains no showing that Abbott was ever accused of, charged with, or convicted of robbery. The State did question witnesses about Abbott holding money in his hand after the shooting of Methene. However, such questioning relates to Abbott's motive for shooting Methene, not to a separate crime of robbery. Of course, motive is always relevant for proof of a crime. *See, e.g.*, *Turner v. State*, 953 N.E.2d 1039, 1057 (Ind. 2011). Abbott's appellate counsel was not

ineffective for failing to argue prosecutorial misconduct relating to claims of robbery.

> 2.      *Failure to raise claim of trial court abuse of discretion for refusing to instruct jury on lesser included offenses of reckless homicide and involuntary manslaughter.*

[30]    Abbott alleges that his appellate counsel was ineffective for failing to claim on direct appeal that the trial court abused its discretion in refusing to instruct the jury on reckless homicide and involuntary manslaughter as lesser included offenses of murder. The Indiana Supreme Court has developed a three-part test that trial courts are to use when asked to instruct a jury on a lesser included offense of the crime charged:

> First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. *Id.* at 566. Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. *Id.* at 567. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. *Id.* Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, "it must look at the evidence presented in the case by both parties" to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.* "[I]t is reversible error for a trial court not to give an instruction, when

> requested, on the inherently or factually included lesser offense"
> if there is such an evidentiary dispute. *Id.*

*Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012) (citing and quoting *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995)).

[31] Involuntary manslaughter is not an inherently included lesser offense of murder, as Abbott claims. *See e.g.*, *Ketcham v. State*, 780 N.E.2d 1171, 1177 (Ind. Ct. App. 2003), *trans. denied*. However, it may be a factually included lesser offense if the charging information alleges that a battery[9] accomplished the killing. *Id.* It is within the State's "discretion to draft the information in a manner that foreclose[s] the opportunity for [the defendant] to seek a conviction on a lesser offense" that is not inherently included. *Norris v. State*, 943 N.E.2d 362, 369 (Ind. Ct. App. 2011), *trans. denied*; *see also Jones v. State*, 966 N.E.2d 1256, 1258 (Ind. 2012) (noting that, although the State cannot foreclose through its drafting of the charging information an instruction on an inherently lesser included offense, it may foreclose an instruction on a factually lesser included offense). Here, the charging information contains no reference to battery; it alleges only that Abbott "did knowingly and intentionally kill [a] human being." Appellant's App. at 1. Therefore, involuntary manslaughter was not a

---

[9] Battery is a knowing or intentional touching of another person in a rude, insolent, or angry manner. I.C. § 35-42-2-1 (2000)

factually lesser included offense in this case, and appellate counsel did not err in failing to raise such a claim.

[32] Reckless homicide *is* an inherently lesser included offense of murder. *See, e.g.*, *Lane v. State*, 997 N.E.2d 83, 87-88 (Ind. Ct. App. 2013), *trans. denied*. The only difference between a reckless homicide[10] and a murder[11] is that the latter requires knowing or intentional conduct, while the former requires only reckless conduct. *Webb*, 963 N.E.2d at 1106. Therefore, we must determine if the evidence presented at trial by both parties created a serious evidentiary dispute about whether Abbott knowingly[12] or recklessly killed Methene. *Wright*, 658 N.E.2d at 567.

[33] Here there is no serious evidentiary dispute that Abbott acted knowingly and intentionally. The evidence shows that he went to a friend's house to get a gun, got the gun, loaded the gun on the way to confront Methene about money, took the gun with him when he got out of the car to confront Methene, got in an argument with Methene, and shot Methene in the back as Methene walked away from him after the argument. There is no evidence in the record to show that Abbott shot Methene with anything less than an awareness of a high

---

[10] "A person who recklessly kills another human being commits reckless homicide, a Class C felony." I.C. § 35-42-1-5 (2000).

[11] "A person who knowingly or intentionally kills another human being . . . commits murder, a felony." I.C. § 35-42-1-1(1) (2000).

[12] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b) (2000).

probability that he was engaged in killing. *See, e.g.*, *Lane*, 997 N.E.2d at 89 (finding no serious evidentiary dispute that defendant acted knowingly when evidence showed he shot victim in the back after a botched drug transaction). Thus, the trial court did not abuse its discretion in refusing to instruct the jury on reckless homicide, and appellate counsel did not err in failing to raise such a claim.

### 3. *Failure to raise claims regarding sentencing*

Abbott alleges that his appellate counsel was ineffective for failing to appeal his sentence under Indiana Appellate Rule 7(B).[13] However, Abbott cites no authority or record evidence in support of his Rule 7(B) claim. Nor does he present any cogent argument as to why the sentence is inappropriate in light of the nature of the offense and his character, let alone why a Rule 7(B) issue would have been obviously stronger than the issues actually raised in his direct appeal. *See Montgomery*, 21 N.E.3d at 854. Therefore his Rule 7(B) claim is waived. App. R. 46(A)(8)(a); *see Pierce*, 29 N.E.3d at 1267.

Abbott also alleges that the sentence was "unreasonable" because the jury, not the judge, should have weighed the aggravating and mitigating factors.

---

[13] Rule 7(B) allows us to revise a sentence if we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. However, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).

Appellant's Br. 28-29. For the reasons noted above, this apparent *Apprendi/Blakely* claim fails.

[36] Finally, Abbott alleges that his appellate counsel erred by not arguing that the trial court abused its discretion in considering the aggravating factor that Abbott is in need of treatment best provided in a penal facility. This claim fails for the same reason it failed as to the alleged ineffective assistance of trial counsel, i.e., the trial court's sentencing statement explained why Abbott's extensive juvenile record and criminal history justified the use of this aggravator and, therefore, the trial court did not err.

[37] Abbott's ineffective assistance of appellate counsel claims related to sentencing are without merit.

### 4. *Failure to raise claim that Jones' prior out-of-court statement was inadmissible hearsay*

[38] Abbott claims his appellate counsel was ineffective for failing to raise the alleged inadmissibility of Jones' January 20, 2001, prior out-of-court statement. However, as noted above, Abbott has not demonstrated prejudice as a result of the alleged error in the admission of Jones' out of court statement. Abbott cannot show that, but for that error, there is a reasonable probability that the result of the proceedings would have been different. *See, e.g.*, *Bethea v. State*, 983 N.E.2d 1134, 1139 (Ind. 2013) (holding that, even if appellate counsel's failure to raise a claim was unreasonable, the defendant still must demonstrate a reasonable probability that the outcome of the direct appeal would have been

different). Thus, his appellate counsel was not ineffective for failing to raise this argument.

### 5. Failure to raise claim of prosecutorial misconduct in closing argument

As noted previously, none of the prosecutor's statements in closing argument constituted misconduct; therefore, appellate counsel cannot be faulted for failing to raise this claim on direct appeal. Moreover, even if one or all of the prosecutor's statements constituted misconduct, Abbott has failed to show prejudice from those statements. The record contains ample evidence upon which the jury could have relied for its verdict, regardless of the propriety of the prosecutor's closing arguments.

### 6. Failure to adequately argue that there was insufficient evidence to prove Abbott did not act under "sudden heat"

Abbott's final claim of inadequate assistance of appellate counsel derives from the third category for such claims, i.e., failure to present issues well. *Montgomery*, 21 N.E.3d at 854. As our supreme court has noted, claims in this category are the most difficult for defendants to advance and for reviewing tribunals to support. *Bieghler*, 690 N.E.2d at 195. "[T]his is so because such claims essentially require the reviewing court to reexamine and take another look at specific issues it has already adjudicated to determine 'whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision.'" *Hollowell v. State*, 19 N.E.3d 263, 270 (Ind. 2014) (quoting *Beighler*, 690 N.E.2d at 195).

Abbott claims that, had his appellate counsel argued that Jones' June 20, 2001, out-of-court statement was inadmissible hearsay, there would have been no basis for the finding that Abbott acted intentionally instead of "with sudden heat." As we have previously explained, Abbott is mistaken that the decision in this case would have been any different had that statement been excluded. There was ample evidence in the record besides the June 20 statement to support the finding that Abbott acted intentionally and not "with sudden heat."[14]

### Conclusion

In sum, neither Abbott's trial nor appellate counsel was ineffective in his representation of Abbott; therefore, we affirm the judgment of the post-conviction court.

Affirmed.

Kirsch, J., and Barnes, J., concur.

---

[14] Moreover, Abbott's only claim as to why he acted with sudden heat is because Methene insulted him and then walked away from him in front of other people. However, as we held in the direct appeal, mere words or gestures of disrespect are not sufficient provocation to precipitate sudden heat. *Abbott I*, slip op. at *4-5 (citing *Gregory v. State*, 540 N.E.2d 585, 593 (Ind. 1989)).