# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 12 2018, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Adrian Edwards
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Adrian Edwards,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 12, 2018

Court of Appeals Case No.
49A05-1702-PC-337

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49G01-0408-PC-145104

**Bailey, Judge.**

# Case Summary

Pro-se Appellant-Petitioner Adrian Edwards ("Edwards") appeals the denial of his petition for post-conviction relief, challenging his convictions for two counts of Murder, a felony,[1] and one count of Conspiracy to Commit Murder, a Class A felony.[2]  We affirm.

# Issues

Edwards articulates seven issues for review.  We address those issues that are not waived, res judicata, or procedurally defaulted,[3] which we consolidate and restate as the following three issues:

> I.    Whether Edwards was denied the effective assistance of trial counsel;

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-41-5-2.

[3] Post-conviction procedures do not afford the petitioner with a super-appeal, and not all issues are available. *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999).  Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules.  *Id.*  If an issue was known and available, but not raised on direct appeal, it is waived.  *Id.*  If it was raised on appeal, but decided adversely, it is res judicata.  *Id.*  Most free-standing claims of error are not available in a post-conviction proceeding because of these doctrines.  *Woods v. State*, 701 N.E.2d 1208, 1215 (Ind. 1998).  Thus, we do not address Edwards's claim that the trial court erred in admitting a portion of a police officer's testimony, which Edwards considers invasive of the jury's province, except as it relates to a claim of ineffectiveness of counsel.  Nor do we address Edwards's claim that fundamental error occurred at sentencing in the denial of his right of allocution.  He did not pursue this claim on direct appeal or at the post-conviction hearing, but summarily mentions the alleged deprivation in his appellate brief.

II.     Whether he was denied the effective assistance of appellate counsel; and

III.    Whether the post-conviction court abused its discretion in the issuance of subpoenas for post-conviction witnesses.

# Facts and Procedural History

[3]    The facts underlying Edwards's convictions were recited by a panel of this Court on direct appeal, as follows:

> On May 29, 2004, Djuan Edwards (Djuan), Adrian's cousin, shot Jermaine Foster and Michael Solomon, injuring Foster and killing Solomon. Foster called 911 for help and identified Djuan as the shooter. April Adkisson had seen the shooting and also called 911, describing the suspected shooter, the direction in which he fled, and his vehicle. At that time, Adkisson was dating Michael Moss, who knew Djuan. Foster, Moss, and Adkisson identified Edwards as the shooter.
>
> At some point following the shooting, Djuan spoke to Adrian about the witnesses, explained that he was planning to turn himself into the authorities, and said, "[n]o witnesses, no case…." Tr. P. 490, 597, 601, 679. On June 1, 2004, Djuan turned himself into the authorities, and on June 3, he learned that Foster, Moss, and Adkisson were listed as witnesses for the State.
>
> Djuan instructed Adrian, Brandon Hardiman, and Chris Ealy to notify him if they saw Moss or Foster. On June 10, 2004, officers discovered Moss, dead, in his front yard. He had been shot multiple times. Upon entering Moss's residence, the officers discovered Adkisson, who was also dead and had sustained multiple gunshot wounds. That same morning, Hardiman was

awoken by Adrian, who stated that he had entered Moss's home and "shot the bitch in the face…" *Id.* At 504, 590-91, 632, 653.

On August 11, 2004, the State charged Adrian with two counts of murder and three counts of class A felony conspiracy to commit murder. On January 13, 2006, the State filed a notice of intent to offer recordings of Djuan's telephone calls made from jail into evidence. Adrian objected, but on March 22, 2006, the trial court granted the State's motion. At trial, Hardiman identified the voices of the individuals speaking on the recordings. Among other things, the recordings reveal that on June 2, 2004, Djuan asked Hardiman, "what y'all being doing—huntin' and sh*t[?]" *Id.* At 529-30. Adrian told Djuan, "the only thing they got is no witness[es]." *Id.* At 531. Adrian also informed Djuan, "I'm tryin' to have your back…." *Id.* On June 10, 2004, after officers discovered the bodies of Moss and Adkisson, Djuan told Ealy, "Well, you got to buy that one for me, too, man … for real cause that's the last car I need…" *Id.* At 568, 570-71. Djuan went on to say, "but please man, make sure you do that for me," and Ealy responded, "Yeah – I'm gonna buy it." *Id.* At 571. Later that day, Djuan told Ealy that he needed to buy a blue car, which Ealy understood to mean that Foster was to be killed. *Id.* At 647-48.

A three-day trial began on March 27, 2006, and on March 30, the jury found Adrian guilty as charged. On April 21, 2006, the trial court found that Adrian's convictions for conspiracy to commit the murders of Moss and Adkisson merged, respectively, into his convictions for murdering those individuals. The trial court sentenced him to fifty-five years imprisonment for each murder conviction and to thirty years for the conspiracy conviction relating to Foster, to be served consecutively, for a total of 140 years imprisonment.

*Edwards v. State*, No. 49A02-0705-CR-383, slip op at 1-2 (Ind. Ct. App. Mar. 24, 2008), *trans. denied*.

[4] On appeal, Edwards argued that the trial court erroneously admitted into evidence recordings of Djuan's telephone calls made from jail and that there was insufficient evidence to support the murder and conspiracy convictions. *Id.* Edwards's convictions were affirmed. *Id.*

[5] On September 8, 2008, Edwards filed a petition for post-conviction relief. Subsequently, Edwards's public defender withdrew representation; Edwards proceeded pro-se. On January 29, 2016, Edwards was granted leave to file an amended petition for post-conviction relief. Therein, Edwards alleged ineffectiveness of trial and appellate counsel and fundamental trial error. The post-conviction court conducted a hearing on March 1, 2016, at which brief testimony from trial counsel was heard. On February 1, 2017, the post-conviction court entered its findings, conclusions thereon, and order denying Edwards post-conviction relief. Edwards now appeals.

# Discussion and Decision

## Post-Conviction Appeal Standard of Review

[6] A defendant who has exhausted the direct appeal process may challenge the correctness of his or her conviction and sentence by filing a post-conviction petition. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002). Post-conviction proceedings are civil in nature and a defendant must establish his claims by a

preponderance of the evidence. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). A petitioner who has been denied post-conviction relief appeals from a negative judgment, and to the extent that his appeal turns on factual issues, he must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Stevens*, 770 N.E.2d at 745. We do not defer to the post-conviction court's legal conclusions, but accept its factual findings unless they are clearly erroneous. *Id.*

## Effectiveness of Trial Counsel

[7] Edwards contends that his trial counsel was ineffective. As our Indiana Supreme Court has observed:

> [t]his Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002).

[8] First, Edwards claims that his trial counsel "fail[ed] to challenge Opinion Witness Testimony for Drug Codes and Jargon that were false and misleading in violation of the Article I, section 12, 13, and 23 of the Indiana Constitution and [the] 5th, 6th, and 14th Amendment[s] to the United States Constitution." Appellant's Brief at 5. He complains that Indianapolis Police Detective Wagers ("Det. Wagers") provided testimony that was "incredible due to the fact Det. Wagers did not possess the Skills or the prior educational abilities in Voice recognition to determine the accuracy of the Identification of the persons through [the] Marion County jail phone system" and that Det. Wagers "testified about alleged Code Words that were used during phone calls to Order the killing of the victims in this case." Appellant's Brief at 8-9.

[9] Edwards apparently refers to recorded telephone conversations discussed on direct appeal, as follows:

> Here, Hardiman, a cousin of Djuan and Adrian, and Ealy, a close friend, identified the caller as Djuan and identified the voices of Adrian and the other participants of the various recorded telephone conversations. Hardiman and Ealy were able to make the respective identifications based on their long acquaintances with Adrian and the other participants. The authentication was corroborated by Marion County Sheriff's Department employees charged with running the jail telephone system and the Indianapolis Police Detectives who obtained and reviewed the calls.

*Edwards*, slip op. at 2.

[10] At the post-conviction hearing, Edwards elicited very brief testimony from his trial counsel and the trial counsel for one of the co-defendants. Edwards did not question counsel as to strategic reasons for making or withholding objections during police testimony that either corroborated voice authentication or explained the witnesses' understanding of particular jargon. Edwards did not direct the post-conviction court to specific instances of alleged improper testimony. In short, Edwards failed to develop this contention of trial counsel error at the post-conviction hearing.

[11] On appeal, Edwards likewise fails to develop an argument clearly identifying his trial counsel's perceived deficiencies. On one hand, Edwards observes that "Counsel made many objections to Det. Wagers testifying about these phone conversations and the Trial Court overruled the Objections." Appellant's Brief at 9. On the other hand, he argues that counsel withheld appropriate objections, yet he does not direct us to specific portions of the record to support this contention. "In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure." *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001). In this instance, we are presented with a bald assertion and lack record citations to particular testimony Edwards finds objectionable; we are thus unable to discern whether additional objections if lodged by counsel would have been sustained.

[12] Edwards suggests that his counsel should have procured a voice-identification expert and he discusses at some length the requirements for admissibility of

expert testimony and the scientific principles relative to the uniqueness of each person's voice. Edwards fails, however, to acknowledge that his voice was identified by his cousin and his friend; he does not explain how he was prejudiced by the omission of a voice expert.

[13] Edwards also claims that his trial counsel was "ineffective for failing [to] challenge that No Overt Act was proven for a Conspiracy to Commit Murder." Appellant's Brief at 5. This is, at bottom, a claim that counsel failed to recognize that insufficient evidence supported Edwards's conspiracy conviction. The State alleged an overt act of locating victims. The overt act in a conspiracy count may be performed by either the accused or a person with whom he agreed. *Minnifield v. State*, 512 N.E.2d 1103, 1105 (Ind. 1987).

[14] On direct appeal, Edwards obtained review of the sufficiency of the evidence supporting each of his convictions:

> To convict Adrian of murder, the State was required to prove beyond a reasonable doubt that he knowingly and intentionally killed another human being, specifically, Moss and Adkisson. I.C. § 35-42-1-1. To convict Adrian of conspiracy to murder Foster, the State was required to prove beyond a reasonable doubt that he agreed with another person to commit that murder. *Id.*; I.C. § 35-41-5-2.

> A murder conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind. 1999). Circumstantial evidence is sufficient if inferences may reasonably be drawn therefrom to enable the factfinder to find the defendant guilty beyond a reasonable doubt. *Id.* The uncorroborated testimony of one witness, including an accomplice, may be

sufficient, by itself, to sustain a conviction on appeal. *Toney v. State*, 715 N.E.2d 367, 369 (Ind. 1999).

Here, although there was no forensic evidence linking Adrian to the crimes, Hardiman and Ealy testified at length regarding their knowledge of the plan to hunt down and kill Moss, Adkisson, and Foster at Djuan's request. Both men also testified that Adrian actively participated in the crimes. And Adrian testified that he did, in fact, state "no witnesses, no case [against Djuan]," tr. P. 735, on at least one occasion. Hardiman and Ealy both recalled Adrian making the statement at other times as well. Adrian admitted that he owned two shotguns, a type of weapon used in the murders. Hardiman and Ealy both testified that Adrian told them that he kicked in the door to Moss's residence – which was, in fact, kicked in – and then shot Adkisson. Indeed, Adrian still had a gun in his hand when he relayed the story to Hardiman. *Id.* At 503. Moreover, the recordings of telephone conversations between Djuan, Adrian, and others include coded instructions from Djuan to kill Moss, Adkisson, and Foster, and the other participants' agreement to commit the murders.

As a whole, we find that this is sufficient circumstantial evidence to support Adrian's convictions. Adrian emphasizes the lack of forensic evidence and directs our attention to alleged inconsistencies in the testimony of Hardiman and Ealy, but these amount to requests that we reweigh the evidence and judge the credibility of witnesses – practices in which we do not engage when evaluating the sufficiency of the evidence supporting a conviction.

*Edwards*, slip op. at 4. In the face of sufficient evidence supporting Edwards's convictions, he cannot show that trial counsel was deficient for failing to draw attention to alleged insufficiency.

[15] Edwards also contends that his trial counsel was ineffective for failing to move to sever his trial from that of Djuan. Indiana Code Section 35-34-1-9(b)(2) then provided:

> Two (2) or more defendants can be joined in the same indictment or information when:

> each of the defendants is charged as a conspirator or party to the commission of the offense and some of the defendants are also charged with one (1) or more offenses alleged to be in furtherance of the conspiracy or common scheme or plan; however, a party to the commission of an offense or conspirator need not be designated as such in the indictment or information[.]

[16] During the post-conviction hearing, Edwards questioned counsel about severance. Djuan's counsel responded that she "did not believe" she moved for severance and Edwards's counsel testified that he "didn't remember" whether or not he filed a motion to sever. (P-C.R. App. at 109, 111.) Even if we assume that there was, in fact, no motion for severance made, Edwards cannot show that counsel was deficient without also showing that there were grounds for severance and a motion would have been granted. *See Smith v. State*, 465 N.E.2d 1105, 1121 (Ind. 1984) (recognizing that, where alleged co-conspirators are joined for trial upon statutory authority, a motion for severance must be supported by adequate grounds).

[17] According to Edwards, "the evidence at trial was confused and conflicted as to which defendant was charged with what Murder" and "the jury could have easily presumed that both were involved in both murders which was not true."

Appellant's Brief at 18. Edwards fails to provide any citation to relevant legal authority or corresponding argument, but instead baldly asserts that he suffered prejudice from potential jury confusion. "On review, we will not search the record to find a basis for a party's argument, nor will we search the authorities cited by a party in order to find legal support for its position." *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997). Moreover, we hold pro se litigants such as Edwards to the same performance standards as practicing attorneys. *See e.g., Smith v. State*, 822 N.E.2d 193, 203 (Ind. Ct. App. 2005), *trans. denied*. Edwards has waived his claim for failure to provide cogent argument. *See Appellate Rule* 46(A)(8)(a).

[18] Finally, Edwards claims that his trial counsel was "ineffective for failing to move for [a] single episode of criminal conduct for the Conspiracy charge and require Edwards Sentences be ran concurrent due [to] the balancing of the Mitigation and Aggravating facts." Appellant's Brief at 20. Edwards' corresponding argument is unclear; as best we can discern, he believes that counsel should have pointed out at sentencing that Conspiracy to Commit Murder is not defined as a crime of violence in the consecutive sentencing statute, Indiana Code Section 35-50-1-2, and that his crimes were a single episode of criminal conduct, according to that statute.[4]

---

[4] Indiana Code Section 35-50-1-2(b) defines an "episode of criminal conduct" as an "offense or a connected series of offenses that are closely related in time, place, and circumstance." Although he does not develop a factual argument relative to his offenses, Edwards seems to be persuaded that the foregoing statute requires fully concurrent sentences for offenses that constitute an episode of criminal conduct. He is incorrect. Rather, the statute imposes various limitations for an episode of criminal conduct. At the time of Edwards's

Edwards seems to suggest that proper argument on the part of his counsel could have prevented the imposition of consecutive sentences. We disagree. A single aggravating circumstance may justify the imposition of consecutive sentences. *Gilliam v. State*, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009). "The presence of multiple victims is one such aggravating circumstance." *Id.* Edwards has not demonstrated that counsel performed deficiently because he did not obtain concurrent sentences for Edwards.

## Effectiveness of Appellate Counsel

The two-pronged standard for evaluating the assistance of trial counsel first enunciated in *Strickland* is applicable to appellate counsel ineffective assistance claims. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997). Claims of ineffectiveness of appellate counsel will generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013). Edwards claims that his appellate counsel failed to raise meritorious issues; thus, his claim is based upon the waiver of issues category. In order to show that counsel was ineffective for failing to raise an issue on appeal, thereby resulting in waiver for collateral review, "the defendant must overcome the strongest presumption of

---

sentencing, subsection (c) provided in part: "except for crimes of violence, the total of the consecutive terms of imprisonment … to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

adequate assistance, and judicial scrutiny is highly deferential." *Ben-Yisrayl*, 738 N.E.2d at 260-61.

[21] To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than those raised. *Garrett*, 992 N.E.2d at 724. If the analysis under this test demonstrates that appellate counsel performed deficiently, we then evaluate the prejudice prong. *Id.* This requires an examination of whether the issues that appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Id.* Appellate courts should be particularly deferential to an appellate counsel's strategic decision to include or exclude issues, unless the decision was "unquestionably unreasonable." *Bieghler*, 690 N.E.2d at 194 (Ind. 1997).

[22] Edwards contends that his appellate counsel should have argued that the trial court improperly admitted Detective Wagers' testimony explaining what he perceived to be code words used during recorded jail conversations. The post-conviction court observed that Edwards failed to support his bald assertion:

> At the evidentiary hearing, the Defendant did not present any evidence from appellate counsel regarding why she did not raise this issue, and thus without impermissible speculation, it is impossible to determine why counsel selected and rejected the various available issues. While the issue that the Defendant now touts might have been an issue that possibly could have been raised on appeal, he makes no showing that this issue was clearly stronger than ones that appellate counsel ultimately chose.

> Certainly, allowing a case detective to testify regarding the meaning of "coded" language is not without precedent. *See e.g. United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009). Moreover, in addition to failing to elicit specific testimony from appellate counsel, the defendant has also failed to provide specific citations in the record where he believes the case detective's testimony was improper. Most fundamentally, the Defendant's unsupported assertions do not, "show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002). And consequently the Defendant has failed to meet his burden of proof on these claims.

(App. at 101-02.) We, like the post-conviction court, have nothing beyond a bald assertion. Edwards does not direct us to specific instances in the record where allegedly inadmissible testimony was permitted and he does not present legal argument as to the strength of the omitted appellate issue.

[23] Edwards also summarily asserts that appellate counsel should have challenged the lack of an overt act to support the conspiracy conviction and the lack of eyewitnesses, and should have raised issues regarding non-severance, invasion of the jury's province, and sentencing error. As we have previously discussed, appellate counsel raised an issue of sufficiency of the evidence and Edwards's convictions were affirmed. To the extent that he attempts to support an allegation of ineffective appellate assistance with unsupported claims of trial counsel ineffectiveness or trial error, he cannot prevail. Edwards has failed to show that his trial counsel was ineffective, and his claims of ineffective

assistance of appellate counsel premised upon trial counsel's alleged deficiencies must also fail. *Allen v. State*, 749 N.E.2d 1158, 1168-69 (Ind. 2001).

[24] Appellate counsel is presumed effective, and Edwards did not show that appellate counsel omitted an obvious issue with a greater chance of success than those issues actually raised. Accordingly, the post-conviction court did not err in denying post-conviction relief on grounds of ineffectiveness of appellate counsel.

## Issuance of Subpoenas

[25] Edwards contends that the post-conviction court abused its discretion when it denied his requests for the issuance of subpoenas to some potential witnesses.

[26] Our Post-Conviction Rules provide, in relevant part:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Ind. Post-Conviction Rule 1(9)(b). Under this rule, a post-conviction court has discretion to determine whether to grant or deny the petitioner's request for a subpoena. *Pannell v. State*, 36 N.E.3d 477, 486 (Ind. Ct. App. 2015). We will

find that a post-conviction court has abused this discretion if its decision is against the logic and effect of the facts and circumstances before it. *Id.*

[27] Edwards requested subpoenas for six post-conviction witnesses; the two subpoenas directed to trial counsel were issued. However, the post-conviction court denied the requests for subpoenas to Hardiman, Ealy, Djuan, and Tia Thomas (Edwards's girlfriend at the time of the murders), entering findings in each instance that the evidence sought was not germane to the proceedings.

[28] Edwards claims that Hardiman, Ealy, and Djuan would each be expected to recant prior false trial testimony and/or police statements. As for Thomas, Edwards anticipated that she would testify, consistent with her trial testimony, that Edwards had been with her at the time of the murders of Moss and Adkisson.

[29] The post-conviction court did not abuse its discretion in denying subpoenas for Hardiman, Ealy, and Djuan based upon their alleged recantations. Post-conviction proceedings are not designed to permit attacks on witness credibility, but rather to address issues demonstrably unavailable at trial and on direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). Although Edwards might arguably have pursued a claim of newly-discovered evidence if Hardiman, Ealy, and Djuan were willing to recant prior testimony, he has not done so. He brought a post-conviction proceeding alleging ineffectiveness of counsel and has made no showing that post-trial witness recantations were relevant to his counsel's performance. Likewise, the anticipated testimony from

Thomas does not appear germane to the issue of ineffectiveness of counsel. Because none of the anticipated testimony pertained to Edwards's claimed basis for post-conviction relief, we find no abuse of discretion in the trial court's denial of the issuance of the requested subpoenas.

# Conclusion

[30] Edwards has failed to show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Edwards has not demonstrated an abuse of discretion in the issuance of subpoenas. Thus, we affirm the post-conviction court's judgment denying Edwards post-conviction relief.

[31] Affirmed.

Kirsch, J., and Pyle, J., concur.