## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2018, 10:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Elmer Dean Baker
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Elmer Dean Baker,
*Appellant-Petitioner,*

v.

State of Indiana,
*Appellee-Respondent.*

December 12, 2018

Court of Appeals Case No.
18A-PC-354

Appeal from the DeKalb Superior Court

The Honorable J. Scott VanDerbeck, Special Judge

Trial Court Cause No.
17D01-1604-PC-3

**Bradford, Judge.**

# Case Summary

[1] In August of 2008, Elmer Dean Baker was convicted of two counts of Class A felony child molestation and Class C felony child molestation and found to be a habitual offender, for which he was sentenced to 106 years of incarceration. We affirmed Baker's convictions on direct appeal, as did the Indiana Supreme Court on transfer.

[2] In 2016, Baker filed his amended petition for post-conviction relief ("PCR"), contending, *inter alia*, that he was entitled to relief because he received ineffective assistance of appellate counsel ("IAAC"). The post-conviction court denied his petition in full. Baker contends that the post-conviction court erred by denying him PCR. Because we conclude that Baker has failed to establish that he received IAAC, we affirm.

# Facts and Procedural History

[3] The underlying facts leading to Baker's appeal of the denial of his PCR petition are as follows:

> On July 3, 2006 the State charged then fifty-nine-year-old Elmer Dean Baker with two counts of child molesting as Class A felonies. The victims of the alleged offenses were two of Baker's grandchildren, C.B. and J.A. And the offenses were alleged to have occurred in "June and July of 2003." After a jury trial in June of 2007 the trial court declared a mistrial when the jury could not reach a verdict. Thereafter the State sought leave to amend the charging information to reflect the time period "from October 2000 through August 2003." An additional count of

child molesting as a Class C felony was also added. The alleged victim was A.H., a cousin of C.B. who is unrelated to Baker. This offense was alleged to have occurred "in or about 2002." Baker was also alleged to be a habitual offender.

Over Baker's objection the trial court permitted the amendments. And a retrial began on August 13, 2008. Evidence presented by the State is summarized in part as follows: C.B., who was eighteen years of age at the time of trial, testified that she was born in September 1990, her cousin J.A. was born in December 1990, and that during the period between 2000 and 2003 she, J.A., and A.H. were close friends. C.B. also testified that during that period of time her family lived at various locations in DeKalb County including houses and apartments in Spencerville, Auburn, and Garrett, Indiana. According to C.B., Baker first began touching her inappropriately when she was about nine or ten years old. Specifically C.B. recounted an incident in which she and J.A. spent the night at Baker's apartment in Auburn which was next door to her own home where she lived with her parents. J.A. and C.B. were first sleeping in the living room but became frightened for some reason and went into Baker's room to lie down on his bed. C.B. testified that at that point "he started to touch us and he pulled me on top of him…. He [ ] pretended like he was having sex with me but we had, like I had my underwear on…. He like touched our vaginas." She went on to say, "He like placed my hand on his penis and made like the motion of masturbating."

When C.B. was ten or eleven years old Baker, who was a long distance truck driver, often took C.B. with him on overnight truck trips several weekends during the summer months of 2001 and 2002. According to C.B. most of the "sexual stuff" happened "in the semi" and it happened "a lot." When asked by the prosecutor "what kind of stuff happened in the semi truck?" C.B. responded "my grandpa had sex, my grandpa had sex with me." When asked "[w]hat other sex acts took place in the semi truck?"

C.B. recounted an incident in which she and J.A. were together on one of the truck trips and both of them fellated Baker; on another occasion Baker digitally penetrated her and touched her breast.

By the summer of 2003 Baker owned a small house on Story Lake in DeKalb County. At that point C.B. was twelve years of age. On July 3rd of that year C.B. and J.A. were present for a family gathering and spent the night at Baker's house. At some time during the course of the night C.B. and J.A. went into Baker's room and according to C.B. "[u]m, he had sex with me…. Um, he inserted his penis into my vagina." C.B. further testified, "he like touched us and had us touch him … on the private parts." The "us" referred to J.A. C.B. also testified that both she and J.A. "would take turns" fellating Baker.

C.B. recounted another incident occurring at a trailer that Baker owned at the North Pointe Crossing Mobile Home park just north of where she lived in Garrett. The precise date is unclear but the record suggests sometime between 2001 and 2003. C.B., J.A., and A.H. were present at Baker's trailer. The three girls went into Baker's bedroom where he pretended to be asleep. According to C.B. she and J.A. "took turns" fellating Baker, and all three of the girls "touch[ed] his penis."

J.A., who was seventeen years of age at the time of trial, testified that C.B. is her step first cousin and that she refers to Baker as "Grandpa Dean." She also testified that during 2000 to 2003 she, C.B., and A.H. were good friends. She offered testimony that tended to corroborate that of C.B. including an incident involving A.H. According to J.A. the three girls were present at Baker's house. Baker was present and pretending to be asleep. The three girls went into his bedroom where A.H. fellated Baker and J.A. played with his scrotum. "And then me and [A.H.] switched." She further recalled that C.B. was on top of Baker and he was "sucking on her [breast]."

A.H., who was also seventeen at the time of trial, was the third of the alleged victims to testify. Although no specific dates were given, A.H. largely corroborated the testimony of C.B. and J.A. concerning the alleged incident occurring at Baker's house at the mobile home park. Among other things she confirmed that C.B. fellated Baker, and "then [J.A.] did it and then after that I tried it." A.H. also recounted an occasion when she and J.A. were together on a trucking trip with Baker in his semi. The truck was equipped with a bed. While J.A. was in the passenger seat, A.H. went to sleep in the bed. A.H. testified that when she awoke Baker was lying next to her, and her clothing had been removed. Baker rubbed his fingers over her "private area," got on top of her, and "humped [her] stomach until he ejaculated."

Baker testified on his own behalf. He acknowledged occasionally taking all of his grandchildren on semi trucking trips at one time or another and acknowledged owning a house on Story Lake. However, Baker denied engaging in any sexual activity with C.B., J.A., or A.H. In response to his attorney's question "[a]nd you're saying to me that they are lying," Baker responded, "[t]hey absolutely are." Essentially he testified that he believed C.B. had organized the girls to offer false testimony as part of a conspiracy to get even with him after he caught C.B. in a car with a boy at three in the morning as a result of which "she got grounded." According to Baker, about two weeks later C.B. started a "rumor" about him engaging in inappropriate sexual activity.

Following a five-day jury trial Baker was convicted as charged, and he pleaded guilty to the habitual offender allegation. The trial court sentenced him to a consecutive term of imprisonment on each of the three child molest counts for a total of seventy-six years. One of the counts was enhanced by thirty years for the habitual offender adjudication. The total executed term was 106 years.

Baker appealed framing his contentions as follows: (1) the convictions are not sustained by evidence of jury unanimity, (2) the trial court's ruling allowing amendment of the information was in violation of proscriptions under the state and federal constitutions against ex post facto laws; if the amendment can be lawfully applied in this case, it was not applied properly, (3) the trial court committed fundamental error in giving its preliminary instruction 6 and final instruction 5, and (4) defendant's convictions should be set aside due to ineffective assistance of counsel. The Court of Appeals rejected Baker's arguments and affirmed the judgment of the trial court.

*Baker v. State*, 948 N.E.2d 1169, 1171–73 (Ind. 2011) (internal citations omitted).

[4] The Indiana Supreme Court granted transfer to explore Baker's jury unanimity claim, ultimately holding that any instructional error regarding jury unanimity was not fundamental and summarily affirming the balance of the decision by the Court of Appeals. *Id.* at 1173. On April 19, 2016, Baker filed an amended PCR petition, alleging that he received IAAC. On December 12, 2017, the post-conviction court held a hearing on Baker's PCR petition, at which Baker's appellate counsel Latrielle Wheat testified, and it was ultimately denied on January 16, 2018.

# Discussion and Decision

[5] The standard of review for appeals from the denial of PCR is well-settled. Petitioners who have exhausted the direct-appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction

petition. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Petitioner bears the burden of establishing grounds for PCR by a preponderance of the evidence. *Id.* By appealing from a negative judgment, Petitioner faces a rigorous standard of review. *Wesley v. State*, 788 N.E.2d 1247, 1250 (Ind. 2003). Denial of PCR will be affirmed unless, "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.* We do not defer to the post-conviction court's legal conclusion but do accept its factual findings unless they are clearly erroneous. *Stevens*, 770 N.E.2d at 746. The post-conviction process does not provide petitioner with a "super-appeal" but, rather, a "narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules." *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999). Issues that were known and available but not raised on direct appeal are waived, and issues raised but decided adversely are *res judicata*. *Id.*

# I. Sufficiency of Evidence

Baker contends that there was insufficient evidence to convict him of the two counts of Class A felony child molestation because there was no evidence of penetration. Although Baker has tried to frame this as a new issue, it is nothing more than a freestanding claim that is waived. *See Rouster*, 705 N.E.2d at 1003 (noting that an issue known and available but not raised on direct appeal is waived by petitioner).

# II. IAAC

Baker contends that he received ineffective assistance from Wheat when she represented him on direct appeal. The standard for determining whether appellate counsel's performance was ineffective is the same as that for trial counsel. *McKnight v. State*, 1 N.E.3d 193, 204 (Ind. Ct. App. 2013). We review a claim for IAAC based on the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 687, 694, 104 S.Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). […] Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Counsel's performance is presumed effective, and instances of isolated poor strategy, inexperience, or bad tactics are not necessarily ineffective assistance; thus a defendant must offer strong and convincing evidence to overcome the presumption of effective assistance. *McKnight*, 1 N.E.3d at 200.

"Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure

to present issues well." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). "Judicial scrutiny is highly deferential regarding a claim that counsel was ineffective in failing to raise an issue on appeal thus resulting in waiver for collateral review, and the [petitioner] must overcome the strongest presumption of adequate assistance." *McKnight*, 1 N.E.3d at 204. Rarely is ineffective assistance found where petitioner contends that appellate counsel failed to raise an issue on direct appeal, because the decision of which issue to raise is one of the most important strategic decisions made by appellate counsel. *Id.*

## A. IAC Claim Brought on Direct Appeal

Baker contends that Wheat was ineffective for bringing an IAC claim on direct appeal rather than leaving the claim for a post-conviction proceeding. Baker contends that Wheat raised the claim ineffectively by failing to obtain testimony from Baker's trial counsel regarding trial counsel's decision not to obtain a medical expert to refute the State's medical expert's testimony at trial. Although post-conviction proceedings are usually the preferred avenue for bringing IAC claims, they are not prohibited from being brought on direct appeal. *Rogers v. State*, 897 N.E.2d 955, 965 (Ind. Ct. App. 2008), *trans. denied*. Post-conviction proceedings are preferred because presenting such a claim can require developing new facts that are not present in the trial record. *Id.*

Baker has offered no proof of the testimony that needed to be elicited from his trial counsel to develop facts that were not already in the trial record. Arguing that his appellate counsel was ineffective by not eliciting testimony from trial

counsel, without more, is merely speculation. Further, it is Baker's burden to make a record, and because his trial counsel was never called to testify during his PCR hearing, the post-conviction court was not required to believe that trial counsel would have corroborated Baker's allegation. *See Culvahouse v. State*, 819 N.E.2d 857, 863 (Ind. Ct. App. 2004), *trans. denied* (finding that "[w]hen counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that counsel would not have corroborated the petitioner's allegations."). We cannot conclude that Wheat was ineffective by bringing an IAC claim on direct appeal.

## B. Alleged Juror Prejudice

[11] Baker contends that Wheat provided ineffective assistance by failing to claim that trial counsel was ineffective for not moving for a mistrial based on juror exposure to prejudicial newspaper articles. Baker relies on two newspaper articles which discuss his initial arrest and his first trial that resulted in a mistrial. Because at his PCR hearing Baker never admitted these newspaper articles nor any evidence that jurors were exposed to these articles, there was never any evidence of juror prejudice properly before the post-conviction court. Therefore, his claim is unsupported by evidence and therefore groundless.

## C. Alleged Juror Taint

[12] Baker also contends that Wheat provided ineffective assistance by failing to claim that trial counsel was ineffective for not moving for a mistrial based on a juror's conversation with the prosecutor's husband. "Defendants seeking

mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury." *Ramirez v. State*, 7 N.E.3d 933, 939 (Ind. 2014). Even assuming that the prosecutor's husband was an unauthorized person, the communication was not related to Baker's case. The conversation solely consisted of whether the prosecutor's husband was going to play on the same soccer team as the juror that year. (Appellant's App. Vol. VI p. 14). Baker failed to establish that Wheat's performance was ineffective in this regard.

## D. Statute of Limitations

[13] Baker contends that Wheat was ineffective on direct appeal for failing to raise that the State's amended charge of Count III, Class C felony child molestation, violated the applicable statute of limitations. Disregarding trial counsel's failure to object, Baker's claim has no merit. "A charging information must only state the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense." *Blount v. State*, 22 N.E.3d 559, 569 (Ind. 2014) (internal citations admitted). We have noted that when it comes to child molesting cases, time is not of the essence because it is difficult for children to remember specific dates, especially when these incidents of molestation are not immediately reported. *Baber v. State*, 870 N.E.2d 486, 492 (Ind. Ct. App. 2007), *trans. denied*. The statute of limitations for amended Count III in this case was five years. *See* Ind. Code § 35-41-4-2(b)

(2002). On June 18, 2007, the State filed amended Count III, Class C felony child molestation, alleging that the molestation occurred "in or about 2002[.]" The State argues, and Baker does not contest, that trial testimony established that at least one instance of molestation involving all three victims occurred after the conclusion of one Buzz Wilkens's trial, which concluded on October 30, 2002. Thus, that instance involving all three girls occurred after June 18, 2002, which is within the five-year statute of limitations. Baker has failed to establish that Wheat provided IAAC in this regard.

## E. Waiver of Jury

[14] Baker contends that Wheat was ineffective for failing to claim that Baker did not knowingly, voluntarily, and intelligently waive his right to a jury trial. The waiver Baker is referring to occurred, through trial counsel, during the determination of his habitual offender status, at which the State presented evidence of his previous convictions and after which the trial court determined Baker to be a habitual offender. In support of his contention, Baker cites *Horton v. State*, 51 N.E.3d 1154, 1160 (Ind. 2016), in which the Indiana Supreme Court held that a defendant's right to a jury trial in a felony prosecution may only be waived by the defendant personally. Assuming, *arguendo*, that the holding in *Horton* extends to the determination of habitual offender status, said precedent did not exist when Baker's direct appeal was filed in 2009. When choosing the issues to raise on Baker's direct appeal, Wheat could not have been ineffective for failing to foresee legal developments seven years down the road.

# F. Sentencing

[15] Baker contends that Wheat was ineffective for failing to make the following sentencing challenges on direct appeal: (1) his sentence violated the United States Supreme Court's holdings in *Blakely*[1] and *Apprendi*,[2] (2) the trial court abused its discretion by failing to explain why it imposed consecutive sentences, and (3) his sentence was manifestly unreasonable in light of the nature of his offense and his character.

[16] Although Baker contends that his sentence violated the United States Supreme Court's precedent in *Blakely* and *Apprendi* because the trial court considered aggravating circumstances not found by the jury, he fails to recognize that by the time he was sentenced, steps had been taken to conform Indiana's sentencing statutes with said precedent. In 2005, the Indiana General Assembly enacted new sentencing statutes to resolve the Sixth Amendment issues presented by *Blakely. Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. Ct. App. 2007), *clarified on reh'g* 875 N.E.2d 218. In doing so, the General Assembly eliminated fixed terms and enacted sentencing statutes that did not contain a maximum sentence a judge may impose without any additional findings. *Id.* (internal quotations admitted). "As a result, even with judicial findings of aggravating circumstances, it is now impossible to increase the penalty for a

---

[1] *Blakely v. Washington*, 542 U.S. 296 (2004).

[2] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

crime beyond the prescribed statutory maximum." *Id.* (internal quotations admitted). Therefore, even though the trial court found aggravating circumstances in Baker's case, it did not impose—nor could it have imposed—a sentence that was beyond the prescribed statutory maximum in violation of *Blakely* and *Apprendi.*

[17] Baker also contends that Wheat was ineffective for failing to claim that the trial court abused its discretion by failing to explain why it was imposing consecutive sentences. However, the trial court found Baker to have been convicted of multiple offenses against multiple victims, which is sufficient reasoning for ordering consecutive sentences. *See O'Connell v. State*, 742 N.E.2d 943, 952 (Ind. 2001) (emphasizing that multiple crimes or victims constitute a valid aggravating circumstance for imposing consecutive sentences).

[18] Finally, Baker contends that Wheat was ineffective for failing to argue that his sentence was manifestly unreasonable in light of the nature of his offenses and his character. We note that at the time of Baker's sentencing, the current Indiana Appellate Rule 7(B) was effective, which uses "inappropriate" as the standard rather than "manifestly unreasonable." We may revise a sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008) (internal citations omitted). The defendant bears the burden of proving that his

sentence is inappropriate in the light of both the nature of his offense and his character. *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013).

[19] The nature of Baker's offenses does not support a reduction in his sentence. Baker was convicted of two counts of Class A felony child molestation and one count of Class C felony child molestation. Baker committed these offenses against two of his granddaughters and C.B.'s step-cousin, requiring them to have intercourse with and fellate him while in his tractor trailer and home.

[20] Baker's character also does not support a reduction in his sentence. Baker has been convicted of Class B felony criminal confinement, Class D felony theft, Class A misdemeanor resisting law enforcement, Class A misdemeanor battery, Class B misdemeanor disorderly conduct, and two counts of Class A misdemeanor criminal confinement. Despite Baker's many contacts with the criminal justice system, starting in 1969, he has been unwilling to conform his behavior to societal norms. Baker's sentence was not inappropriate, therefore he was not prejudiced by Wheat's failure to raise a 7(B) challenge on direct appeal. Baker has failed to establish that Wheat provided ineffective assistance in this regard.

## G. Prosecutorial Misconduct

[21] Baker contends that Wheat provided ineffective assistance by failing to raise a claim of prosecutorial misconduct. Baker specifically contends that the prosecutor committed improper vouching and elicited sympathy for the State's witnesses. Of the prosecutor's numerous statements which Baker alleges as

misconduct, the one alleged as the most blatant example was in the State's closing argument when the prosecutor, regarding the three victims' testimony, stated "All three (3) of them agreed before you, when they were under oath to tell the truth as they remember it today." Appellant's App. Vol. VI p. 95. We have reviewed this statement and the others Baker has provided and find none of them to be improper vouching or elicitation of sympathy for victims but, rather, fair commenting on the evidence presented at trial. *See Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), *trans. denied* (noting that while a prosecutor may not state his or her personal opinion regarding a witness's credibility at trial, he or she may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial). Baker has failed to establish that Wheat provided IAAC in this regard.

## H. Stipulation of Evidence

[22] Baker contends that Wheat was ineffective by failing to claim that the trial court abused its discretion by allowing the evidentiary stipulation between Baker and the State, which involved testimony that would have allegedly otherwise been inadmissible. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the court misinterprets the law." *Johnson v. State*, 36 N.E.3d 1130, 1133 (Ind. Ct. App. 2015), *trans. denied*. We cannot conclude that the trial court abused its discretion by allowing an evidentiary stipulation that was a clear agreement by both parties.

# I. Plea Offer

[23] Baker contends that Wheat was ineffective for failing to claim that Baker's trial counsel provided ineffective assistance by not communicating to him alleged plea offers from the State. Baker specifically contends that he declined a plea offer during trial because he was inadequately informed by counsel and that counsel never disclosed another plea offer. At Baker's PCR hearing, the post-conviction court asked Baker if he accepted the plea that was offered during trial, to which Baker responded, "On advice of my counsel I didn't, no." Appellant's App. Vol. II p. 191. Moreover, Baker presented another plea offer he alleged to have discovered in his file sent by the public defender's office, claiming it was never disclosed to him by trial counsel. However, the plea agreement was neither signed nor dated by the prosecuting attorney, and Baker presented no testimony from his trial counsel on the matter. "When counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that counsel would not have corroborated the petitioner's allegations." *Culvahouse*, 819 N.E.2d at 863. The post-conviction court denied Baker relief on these claims, and Baker's arguments on appeal are merely an invitation for us to reweigh the evidence, which we will not do. *Mahone v. State*, 742 N.E.2d 982, 984 (Ind. Ct. App. 2001), *trans. denied*. Baker has failed to establish that Wheat was ineffective in this regard.

# J. Rehearing or Writ of Certiorari

[24] Baker contends that Wheat was ineffective for failing to seek a rehearing from the Indiana Supreme Court or a writ of *certiorari* from the United States

Supreme Court on the Indiana Supreme Court's ruling on his jury unanimity claim. Baker does not explain why a request for rehearing or *certiorari* would have been granted, let alone establish that he would have achieved a ruling any more favorable than that handed down by the Indiana Supreme Court on transfer. Moreover, Baker has not established that failing to seek rehearing or *certiorari* falls below the objective standard of reasonableness based on prevailing professional norms, given that a majority of lawyers never even seek transfer. *See Yerden v. State*, 682 N.E.2d 1283, 1286 (Ind. Ct. App. 1997) (noting that "[a] healthy majority of lawyers who lose before the Indiana Court of Appeals, for example, elect not to seek transfer. On the face of it, without any explanation, a lawyer who does not petition for transfer has simply performed according to the statistical norm."). Baker has failed to establish that Wheat's representation constituted IAAC.

# Conclusion

[25] We conclude that Baker's sufficiency of the evidence claim is barred by waiver. We also find no merit in Baker's various IAAC claims. Baker has failed to establish that the post-conviction court erred by denying him PCR.

[26] The judgment of the post-conviction court is affirmed.

Bailey, J., and Brown, J., concur.